No. 66,511

STATE OF KANSAS, *Appellee*, v. DARRELL BAILEY, *Appellant*.

(834 P.2d 342)

Opinion filed May 22, 1992.

*Jeff Griffith*, of Griffith & Griffith, of Derby, argued the cause and was on the brief for appellant.

*Rachelle Worrall Smith*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Robert T. Stephan*, attorney general, were with her on the brief for appellee.

The opinion of the court was delivered by

McFarland, J.: Darrell Bailey appeals his jury trial convictions of first-degree murder (K.S.A. 1991 Supp. 21-3401); rape (K.S.A. 21-3502); aggravated criminal sodomy (K.S.A. 21-3506); aggravated robbery (K.S.A. 21-3427); aggravated battery (K.S.A. 21-3414); battery (K.S.A. 21-3412); criminal damage to property (K.S.A. 1991 Supp. 21-3720); two counts of aggravated kidnapping (K.S.A. 21-3421); two counts of theft (K.S.A. 21-3701); and three counts of aggravated burglary (K.S.A. 1991 Supp. 21-3716). He also appeals the sentence of 40 years' imprisonment imposed pursuant to K.S.A. 1991 Supp. 21-4624.

Two cases were consolidated for trial. The facts are summarized as follows.

### Case No. 90 CR 1517

On June 25, 1990, defendant and James Walker attended a party at the apartment of Darin Adams in Wichita. The two returned later along with a third individual and went into the apartment. Adams was kicked and his VCR was stolen.

### Case No. 90 CR 1516

On July 21, 1990, Kenneth Lowe let defendant into his Wichita apartment to use the telephone. Defendant was told not to let anyone else in. Defendant let James Walker, Harabia Johnson, and Rodney Hooks into the apartment. Harabia started throwing the furnishings around. Lowe left to call the police. When Lowe returned, his VCR was missing and his stereo destroyed.

Later in the evening, defendant knocked on the Wichita apartment door of his great uncle, Sylvester Johnson. Sylvester was entertaining a lady friend, Rose Ann Johnson, and told defendant to leave. Defendant continued to beat on the door. Sylvester opened the door, leaving the screen door closed. Defendant was carrying a VCR and entered the apartment. Three other individuals were outside. Sylvester told the defendant he did not want these individuals in his apartment. Defendant let the other three in (James Walker, Harabia Johnson, and Rodney Hooks). Harabia told Sylvester, "[Y]ou going to die tonight."

Rose Ann heard the commotion and entered the living room. Defendant yelled, "[G]et that bitch's purse." James and Rodney struck Rose Ann and took her purse. Sylvester and Harabia went into the kitchen, where Harabia grabbed a knife and stabbed

Sylvester in the stomach seven or eight times. Sylvester asked defendant if he was going to let this happen. Defendant replied, twice, "[Y]ou going to die."

Defendant and two of his associates looked through Rose Ann's purse. They found some bank credit cards. Defendant suggested they go to the banks and get money. James and Rodney grabbed Rose Ann and started for the door. Sylvester was also taken outside. Harabia stabbed Sylvester several more times, and he was again told he was going to die. Sylvester and Rose Ann were forced to get into Rose Ann's automobile. The group left the area. Defendant was driving, Rose Ann was in the middle of the front seat, and Rodney was in the front passenger seat. James and Harabia sat in the back seat with Sylvester between them. The knife was left outside the apartment.

While in the car, Sylvester was hit repeatedly. Rose Ann was forced to commit oral sodomy on Rodney. Harabia asked if anyone had a weapon with which to kill Rose Ann and Sylvester. No one did.

At an automatic teller machine, defendant and Rodney forced Rose Ann out of the car and attempted to obtain money. While this was occurring, two individuals (August Blanchat and Craig Kershner) arrived at the bank. Kershner was dragged from his truck by Harabia. Sylvester, guarded only by James, saw his chance and ran away. In the confusion, Kershner and Blanchat drove away.

Sylvester received 27 stab wounds in the incident, but survived. Rose Ann was taken to another bank where she, again unsuccessfully, attempted to withdraw money.

At 4:30 the following morning, Rose Ann's nude body was found in Harrison Park. She had been stomped to death. Defendant was arrested and bloodstains of Rose Ann's blood type were found on the bottom of defendant's pant legs. Other facts will be stated as necessary for the discussion of particular issues.

## JURY SELECTION PROCESS

For his first issue, the defendant contends the trial court erred in denying his motion to discharge the jury panel. The grounds for the motion were that the procedure for selecting the prospective jurors from voter registration lists violated the defen-

dant's right to a fair and impartial jury trial as guaranteed by the Sixth Amendment of the United States Constitution and Section 10 of the Kansas Bill of Rights. Additionally, he contends that this procedure is violative of the spirit of K.S.A. 43-155, which provides:

"The public policy of this state is declared to be that jury service is the solemn obligation of all qualified citizens, and that excuses from the discharge of this responsibility should be granted by the judges of the courts of this state only for reasons of compelling personal hardship or because requiring service would be contrary to the public welfare, health or safety; that all litigants entitled to trial by jury shall have the right to juries selected at random from a fair cross section of the community in the district wherein the court convenes; and that all citizens shall have the opportunity to be considered for service on juries in the district courts of Kansas."

Kansas law provides that no person shall be excluded from service as a grand or petit juror in the district courts of Kansas because of race, color, religion, sex, national origin, or economic status. Every juror, grand and petit, shall be a citizen of the state and a resident of the county, and possess the qualifications of an elector. K.S.A. 43-156. Jury commissioners are to prepare a list of persons qualified as jurors in each county from voter registration records of the county, lists of licensed drivers residing in the county, or enumeration or census records for the county. K.S.A. 43-162.

Sedgwick County relies exclusively on voter registration lists in selecting jury panels. Defendant contends this results in minorities being underrepresented on jury panels. In support of his motion, the defendant produced evidence that, according to the 1980 United States Bureau of Census statistics, there were 367,088 people in Sedgwick County divided 8.7% black, 1% Native American, 1.4% Asian/Pacific Island, and 1.6% other, for a total minority population of 12.7%.

Additional evidence was presented that people living in certain areas which contained large majorities of Caucasians had greater representation on juries than people living in certain areas which contained large majorities of minorities. Defendant offered no statistics on how many minority persons were called for jury service for his trial or over any period of time. Also, there was

no evidence offered as to the percentage of adults who were citizens residing in any of the areas.

The defendant presented evidence that minorities are less likely to register to vote than are Caucasians.

The State presented evidence that there are no barriers, legal or otherwise, for minority persons to register to vote, and that the county had a rather extensive program aimed at increasing voter registration among minority and low-income persons. Additionally, evidence was presented that jurors are never excluded or excused because of race. Evidence was also introduced that the single most relevant factor as to who will and who will not register to vote is his or her socioeconomic status.

In *State v. Campbell*, 217 Kan. 756, 765-66, 539 P.2d 329, *cert. denied* 423 U.S. 1017 (1975), a similar challenge was made. This court stated:

"As a general rule a challenge based on alleged discrimination in the selection of a jury necessarily requires a showing that a recognizable identifiable class of persons, otherwise entitled to be jury members, has been purposefully and systematically excluded from jury service (*Brown v. Allen*, 344 U.S. 443, 97 L. ed. 469, 73 S. Ct. 397).

"Defendants here did make a showing that certain groups tended not to register as voters.

"In *United States v. Lewis*, 472 F.2d 252 (CA3, 1973) it was stated:

'. . . We likewise hold that a group of persons who choose not to vote do not constitute a "cognizable group." Further, their non-registration is a result of their own inaction; not a result of affirmative conduct by others to bar their registration. Therefore, while a fairer cross section of the community may have been produced by the use of "other sources of names," the Plan's sole reliance on voter registration lists was constitutionally permissible.' (p. 256.)"

The Kansas Court of Appeals has recently approved the use of voter registration lists, relying on *Campbell* as authority. See *State v. Smith*, 16 Kan. App. 2d 478, 484-85, 825 P.2d 541 (1992).

In *Swain v. Alabama*, 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, *reh. denied* 381 U.S. 921 (1965), *overruled in part* 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712 (1986), the defendant, a black, was convicted by an all-white jury. He challenged Alabama's jury selection procedure. The court explained the evidence:

"The evidence was that while Negro males over 21 constitute 26% of all males in the county in this age group, only 10 to 15% of the grand and petit jury panels drawn from the jury box since 1953 have been Negroes, there having been only one case in which the percentage was as high as 23%." 380 U.S. at 205.

Under Alabama law at the time, jury rolls were selected by three jury commissioners from city directories, registration lists, club and church lists, word of mouth, etc. The commissioners were to select males over 21 reputed to be honest, intelligent men who are esteemed for their integrity, good character, and sound judgment. 380 U.S. at 206.

The Court said,

"Venires drawn from the jury box made up in this manner unquestionably contained a smaller proportion of the Negro community than of the white community. But a defendant in a criminal case is not constitutionally entitled to demand a proportionate number of his race on the jury which tries him nor on the venire or jury roll from which petit jurors are drawn. [Citations omitted.] Neither the jury roll nor the venire need be a perfect mirror of the community or accurately reflect the proportionate strength of every identifiable group. . . . We cannot say that purposeful discrimination based on race alone is satisfactorily proved by showing that an identifiable group in a community is underrepresented by as much as 10%." 380 U.S. at 208-09.

In *Duren v. Missouri,* 439 U.S. 357, 58 L. Ed. 2d 579, 99 S. Ct. 664 (1979), the Court considered a Missouri statute which allowed women to opt out of jury service. The practice resulted in jury venires averaging less than 15% female. 439 U.S. at 360. The Court held this to be unconstitutional.

The Court said:

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." 439 U.S. at 364.

The use of voter registration lists for jury panels excludes one group of persons otherwise eligible for jury service—those who do not choose to register to vote. These persons do not constitute a cognizable group. We conclude that defendant has failed to

establish a prima facie case that the jury panel, as drawn, systematically or purposefully excluded a cognizable group such as blacks or minorities as a whole. A similar result on a similar claim was reached in *State v. Ji,* 251 Kan. 3, 832 P.2d 1176 (1992).

## SUFFICIENCY OF THE EVIDENCE

For his second issue, defendant challenges the sufficiency of the evidence supporting his convictions of aggravated criminal sodomy and rape.

When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Graham,* 247 Kan. 388, 398, 799 P.2d 1003 (1990).

We shall first consider this issue in relation to the aggravated criminal sodomy conviction. Defendant does not contend there was insufficient evidence that the crime was committed; rather, he contends there was insufficient evidence of his participation therein.

K.S.A. 1991 Supp. 21-3205(1) provides:

"A person is criminally responsible for a crime committed by another if such person intentionally aids, abets, advises, hires, counsels or procures the other to commit the crime."

Mere association with the principals who actually commit the crime or mere presence in the vicinity of the crime are themselves insufficient to establish guilt as an aider and abettor; however, when a person knowingly associates himself with the unlawful venture and participates in a way which indicates he willfully is furthering the success of the venture, such evidence of guilt is sufficient to go to the jury. See *State v. Dunn,* 243 Kan. 414, 429, 758 P.2d 718 (1988); *State v. Williams,* 229 Kan. 646, 661, 630 P.2d 694 (1981); *State v. Payton,* 229 Kan. 106, 111, 622 P.2d 651 (1981); *State v. McDaniel & Owens,* 228 Kan. 172, 178, 612 P.2d 1231 (1980); *State v. Wilson & Wentworth,* 221 Kan. 359, 367, 559 P.2d 374 (1977); *State v. Edwards,* 209 Kan. 681, 686, 498 P.2d 48 (1972).

There is abundant evidence defendant actively participated in and, in fact, orchestrated the events on the night in question.

He demanded entrance to his great uncle's apartment, he let his associates into the apartment, he ordered Rose Ann's purse to be taken and searched the same, he suggested they use Rose Ann and her bank cards to obtain money, he was driving Rose Ann's automobile on the way to a bank when the sodomy occurred with Rose Ann sitting beside him, and he was one of the persons forcing her to attempt to withdraw money at the automatic teller machines.

We find no merit in defendant's claim herein relative to his aggravated criminal sodomy conviction.

We shall now consider this issue relative to the defendant's rape conviction. Defendant contends there was insufficient evidence that a rape occurred.

There was no direct evidence of rape. However, a conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Williams*, 229 Kan. 290, 296, 623 P.2d 1334 (1981).

The circumstantial evidence consisted of the following: Rose Ann's body was nude when found, her clothing and hair curlers were scattered over a wide area, her blood was found in more than one location, a condom was found 20 feet from the body, and she had been forced to commit oral sodomy earlier in the automobile.

Was the totality of this circumstantial evidence sufficient to submit the rape charge to the jury? We believe not. The victim herein was viciously and brutally killed by repeated stomping. The scattered bloodstains and hair curlers, indicating movement during the assault, are consistent with this type of assault. There was no evidence that the condom found 20 feet from the body was related to the incident herein. The strongest indication that a rape had occurred was the fact her body was nude, but that fact, alone, or coupled with the earlier sodomy, does not raise a legally sufficient inference that rape had occurred. We conclude that the rape conviction herein must be reversed.

## LESSER INCLUDED INSTRUCTIONS

For his next issue on appeal, defendant contends the trial court erred in refusing to instruct the jury on second-degree murder

and voluntary manslaughter as lesser included offenses of premeditated murder.

K.S.A. 21-3107(3) provides:

"In cases where the crime charged may include some lesser crime, it is the duty of the trial court to instruct the jury, not only as to the crime charged but as to all lesser crimes of which the accused might be found guilty under the information or indictment and upon the evidence adduced. If the defendant objects to the giving of the instructions, the defendant shall be considered to have waived objection to any error in the failure to give them, and the failure shall not be a basis for reversal of the case on appeal."

In *State v. Wilburn*, 249 Kan. 678, 822 P.2d 609 (1991), we held:

"A trial court has the affirmative duty to instruct the jury on all lesser included offenses established by the evidence. Instructions on lesser included offenses must be given even though the evidence is weak and inconclusive and consists solely of the testimony of the defendant. An instruction on a lesser included offense is not required, however, if the evidence at trial excludes a theory of guilt on the lesser offense. The duty of the trial court to instruct on the lesser included offense is applicable only when the evidence introduced at the trial is such that the defendant might reasonably have been convicted of the lesser offense." Syl. ¶ 6.

"When the trial court refuses to give an instruction on a lesser included offense, the appellate court must view the evidence supporting the lesser charge in the light most favorable to the party requesting the instruction." Syl. ¶ 7.

There was overwhelming evidence of premeditation herein. Sylvester was told repeatedly that he was going to die that night. He was stabbed a total of 27 times, and his escape was both fortuitous and miraculous. While the two victims and the four perpetrators were in the automobile, there was inquiry if anyone had a weapon with which to kill both victims. The victim died as a result of multiple stompings. The bloodstains on the bottom of defendant's pant legs indicate he was an active participant therein. The manner of Rose Ann's death and the fact blood was found in more than one location indicates her death was the result of a lengthy and intentional series of acts. No evidence was introduced to indicate Rose Ann's death was not premeditated first-degree murder.

We find no error in the trial court's refusal to instruct on second-degree murder and voluntary manslaughter as lesser included offenses.

## EVIDENCE OF GANG MEMBERSHIP

Prior to trial, defendant filed a motion seeking to exclude evidence of defendant's possible gang membership. The defense argued that evidence was highly prejudicial and had no probative value. The motion was denied.

Evidence was admitted that the four participants were involved in a gang known as the Insane Crips. Much of this evidence concerned the res gestae of the three incidents—statements and gestures made by the participants and clothing that was worn identified as related to the gang. To exclude same would involve restricting the victims' testimony relative to what they saw and heard while the various crimes were occurring. This places such evidence in a rather different category from extrinsic evidence of gang membership.

When a motion in limine is denied, the moving party must object to the evidence at trial to preserve the issue for appeal. *State v. Milo,* 249 Kan. 15, 18, 815 P.2d 519 (1991); *State v. Skelton,* 247 Kan. 34, 45, 795 P.2d 349 (1990); *State v. Nunn,* 244 Kan. 207, Syl. ¶ 5, 768 P.2d 268 (1989).

We fail to find in the record any specific objection to the general category of evidence of gang membership. Defendant objected to the introduction of a shirt with the initials I.C.G. belonging to James Walker, but the objection was on the grounds that Walker was not on trial and there was no showing he was wearing it on the night of July 21, 1990 (victim Lowe, the witness on the stand at the time, immediately corrected the latter ground). Evidence relative to gang membership had previously been admitted without objection. We find the issue has not been preserved for appeal.

As an additional argument on this issue, defendant contends that admission of such evidence violated K.S.A. 60-455 as such was evidence of commission of a crime or other civil wrong. Inasmuch as membership alone in the Insane Crips gang is not a crime or civil wrong, this point lacks merit.

## SERVICE OF NOTICE

The defendant's next issue is claimed error in the refusal of the trial court to strike the State's notice of intent to invoke the mandatory 40-year imprisonment provisions of K.S.A. 1991 Supp.

21-4624 (commonly referred to as "hard 40"). The portion of that statute relating to notice is K.S.A. 1991 Supp. 21-4624(1), which provides:

"If a defendant is charged with murder in the first degree, the county or district attorney shall file written notice if such attorney intends, upon conviction or adjudication of guilt of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be required to serve a mandatory term of imprisonment of 40 years. *Such notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment. If such notice is not filed and served as required by this subsection, the county or district attorney may not request such a sentencing proceeding* and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder." (Emphasis supplied.)

K.S.A. 1991 Supp. 21-4624 became effective on July 1, 1990, three weeks before the murder herein. The newness of the statute may have been the cause of the rather confused procedural course of action herein. Additionally, the record before us contains so many deficiencies that it is impossible to determine exactly what transpired and when various events occurred. The parties appear to agree that the murder charge was originally filed in case No. 90 CR 1324 and that a preliminary hearing lasting more than one day was held thereon with arraignment immediately following. When this occurred is not in the record.

In his brief, defendant states he was arraigned in that case on July 23, 1990. This cannot be correct as the murder occurred July 21, 1990. Even with the implementation of court delay reduction procedures, the process could not have moved that rapidly. A more likely date for arraignment is August 17, 1990, which is the date mentioned in the hearing on the motion to dismiss the notice held October 12, 1990. One of the problems with using that date is that the defense counsel asserting it is not defendant's counsel, but rather Richard Ney, attorney for James Walker. There is nothing in the record before us establishing that defendant herein and Walker were arraigned at the same time. Defense counsel for Bailey, our defendant herein, joined in Ney's motion to dismiss, so we will assume August 17, 1990, is the date of arraignment in 90 CR 1324. It would further appear from the transcript of that hearing that a 21-4624(1) notice was

attached to the complaint/information filed in 90 CR 1324. The State argued therein, and defense counsel did not dispute, that the defense was aware of said notice prior to the preliminary hearing. The argument made by defense counsel was not surprise or prejudice, rather that the statute was not technically complied with inasmuch as a copy of the notice was not served upon defendants at the *arraignment.*

In the record before us is a journal entry of dismissal which dismissed 90 CR 1324 without prejudice on August 22, 1990. On the same day 90 CR 1516, which contains the same murder charge, was filed. The purpose of this, the State says, was to add some new charges relative to a different incident and to avoid any problems on the 21-4624(1) notice. Arraignment on the new case was had on September 13, 1990. A 21-4624(1) notice was served at that arraignment.

Defendant argues that the State, by statute, has one chance to file a notice invoking the so-called "hard 40" and by not doing so by serving a copy of same at the arraignment in 90 CR 1324, the opportunity is forever gone. Further, the State cannot correct its error by dismissing and refiling. Defendant likens the situation to that involving the speedy trial statute, K.S.A. 22-3402. In *State v. Ransom,* 234 Kan. 322, 673 P.2d 1101 (1983), *cert. denied* 469 U.S. 818 (1984), the State, having failed to obtain a trial continuance, dismissed a case to avoid the speedy trial time constraints and then refiled identical charges. We held:

"Where the State dismisses a pending criminal case without making a showing of necessity, and then files a second case charging the same defendant with the same offense, a court must include the time elapsed between arraignment and dismissal of the first prosecution together with the time elapsed between arraignment and trial of the second prosecution, when calculating time for the purpose of applying K.S.A. 22-3402, the Kansas speedy trial statute." Syl. ¶ 1.

"Where the State dismisses a pending criminal case upon a showing of necessity and then files a second criminal case charging the same defendant with the same offense, the computation of time for the purpose of applying K.S.A. 22-3402 commences from the time the defendant is arraigned in the second case." Syl. ¶ 2.

Thus, a showing of necessity is vital if the strategy is to have *its intended effect. Dilatory prosecution techniques or sloppy*

preparation cannot be used to reset the time clock the legislature has prescribed for bringing defendants to trial.

We do not find the speedy trial analogy persuasive herein. Indiscriminate and unlimited usage of a dismissal and refiling strategy could defeat the whole purpose of the speedy trial statute. That is not the same as the situation before us. K.S.A. 1991 Supp. 21-4624 *et seq.* sets forth a lengthy and complex statutory scheme covering all aspects of the hard 40 procedure. The possibly severe consequences to a defendant were not intended to be a last-minute surprise or a matter of conjecture. If faced with a hard 40 prospect, a defendant should be aware of it and be able to plan his or her strategy accordingly. Notice at the time of arraignment serves this purpose. Under the facts before us, no prejudice has been shown to defendant in any respect and no legislative purpose is shown to have been defeated or impaired. We find no error or abuse of discretion in the trial court's denial of defendant's motion to strike the K.S.A. 1991 Supp. 21-4624(1) notice herein.

## SECOND JURY VOIR DIRE

Opportunity for full voir dire of prospective jurors was available in the jury selection herein. Defendant sought the opportunity to conduct a second voir dire on the same jury after conviction and prior to the sentencing proceedings. The trial court denied the request. Defendant contends the second voir dire is authorized by K.S.A. 1991 Supp. 21-4624(2), set forth in pertinent part as follows:

"Except as provided in K.S.A. 21-4622 and 21-4623 and amendments thereto, upon conviction or adjudication of guilt of a defendant of murder in the first degree based upon the finding of premeditated murder, the court upon motion of the county or district attorney, shall conduct a separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable. If any person who served on the trial jury is unable to serve on the jury for the sentencing proceeding, the court shall substitute an alternate juror who has been impaneled for the trial jury. If there are insufficient alternate jurors to replace trial jurors who are unable to serve at the sentencing proceeding, the trial judge may summon a special jury . . . ."

The statute clearly contemplates that sentencing proceedings shall be before the trial jury with alternate jurors being substi-

tuted when necessary. It is only when this is not possible that a new jury is impaneled. Jury selection procedures, including voir dire, come into play only if a new jury is to be impaneled.

In the case before us, a new jury was not impaneled. The trial jury heard the sentencing proceeding. We find this issue to be without merit.

## CONSTITUTIONALITY OF STATUTORY AGGRAVATING FACTORS

In his next issue, the defendant challenges three of the aggravating factors set forth in K.S.A. 1991 Supp. 21-4625 as being unconstitutional on the grounds they are overbroad and vague on their face and, further, unconstitutional as applied to the facts in this case.

In order to place this issue in context, it is necessary to lay a foundation. K.S.A. 1991 Supp. 21-4624 calls for a separate sentencing proceeding if the imposition of the hard 40 is to be considered. In pertinent part, the statute provides:

"(3) In the sentencing proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 21-4625 and amendments thereto and any mitigating circumstances. Any such evidence which the court deems to have probative value may be received regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. Only such evidence of aggravating circumstances as the state has made known to the defendant prior to the sentencing proceeding shall be admissible, and no evidence secured in violation of the constitution of the United States or of the state of Kansas shall be admissible. No testimony by the defendant at the sentencing proceeding shall be admissible against the defendant at any subsequent criminal proceeding. At the conclusion of the evidentiary presentation, the court shall allow the parties a reasonable period of time in which to present oral argument.

"(4) At the conclusion of the evidentiary portion of the sentencing proceeding, the court shall provide oral and written instructions to the jury to guide its deliberations.

"(5) If, by unanimous vote, the jury finds beyond a reasonable doubt that one or more of the aggravating circumstances enumerated in K.S.A. 21-4625 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 21-4628 and amendments thereto; otherwise, the defendant shall be sentenced as provided by law. The jury, if its verdict is a unanimous rec-

ommendation of a sentence of a mandatory term of imprisonment of 40 years, shall designate in writing, signed by the foreman of the jury, the statutory aggravating circumstances which it found beyond a reasonable doubt."

K.S.A. 1991 Supp. 21-4625 sets forth the aggravating factors as follows:

"Aggravating circumstances shall be limited to the following:

"(1) The defendant was previously convicted of a felony in which the defendant inflicted great bodily harm, disfigurement, dismemberment or death on another.

"(2) The defendant knowingly or purposely killed or created a great risk of death to more than one person.

"(3) The defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value.

"(4) The defendant authorized or employed another person to commit the crime.

"(5) The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution.

"(6) The defendant committed the crime in an especially heinous, atrocious or cruel manner.

"(7) The defendant committed the crime while serving a sentence of imprisonment on conviction of a felony.

"(8) The victim was killed while engaging in, or because of the victim's performance or prospective performance of, the victim's duties as a witness in a criminal proceeding."

The jury found factors Nos. 2, 5, and 6 to be present herein, and that they were not outweighed by the mitigating factors set forth in K.S.A. 1991 Supp. 21-4626. The challenge in this issue is limited to aggravating factors Nos. 2, 5, and 6.

Before turning to our consideration of these three factors, some background discussion is appropriate. The general scheme of post-trial sentencing proceedings heard by a jury has developed in states which have a death penalty. Because of concerns of the public, the legislative branch, and the judiciary over the finality and severity of the imposition of the death penalty, the hurdles the prosecution must clear if the death penalty is to be imposed are higher than in any other area of criminal law. Most of the cases involving the constitutionality of such post-trial proceedings arise in the context of the death penalty legislation and are, accordingly, of limited precedential value.

As stated in *Woodson v. North Carolina*, 428 U.S. 280, 303-05, 49 L. Ed. 2d 944, 96 S. Ct. 2978 (1976):

"In *Furman* [*v. Georgia*, 408 U.S. 238, 33 L. Ed. 2d 346, 92 S. Ct. 2726 (1972)], members of the Court acknowledged what cannot fairly be denied—that death is a punishment different from all other sanctions in kind rather than degree.

. . . .

". . . Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two. Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case."

In *Woodson*, the Court held that mandatory death penalty statutes were unconstitutional because there was a need, under the Eighth Amendment, for particularized treatment of the individual.

See also *Rummel v. Estelle*, 445 U.S. 263, 63 L. Ed. 2d 382, 100 S. Ct. 1133 (1980), involving a life sentence for felony theft under habitual offender enhancement, wherein the Court said: "Because a sentence of death differs in kind from any sentence of imprisonment, no matter how long, our decisions applying the prohibition of cruel and unusual punishments to capital cases are of limited assistance in deciding the constitutionality of the punishment meted out to Rummel." 445 U.S. at 272.

In *State v. Robinson*, 239 Kan. 269, 718 P.2d 1313 (1986), we held:

"In determining whether a statute is void for vagueness two inquiries are appropriate: (1) whether a statute gives fair warning to those persons potentially subject to it, and (2) whether the statute adequately guards against arbitrary and discriminatory enforcement." Syl. ¶ 3.

"A statute which is overbroad is one which makes conduct punishable which under some circumstances is constitutionally protected from criminal sanctions. A statute which is facially overbroad may be authoritatively construed and restricted to cover only conduct which is not constitutionally protected and, as construed, the statute will thereafter be immune from attack on grounds of overbreadth." Syl. ¶ 4.

In *Robinson*, the issue was whether a statute defining a crime was vague or overbroad. In the case before us, the statute involves the sentence to be imposed for first-degree murder—life as opposed to serving a mandatory 40 years. In other words, we are involved with the penalty for a crime rather than whether or not certain conduct is a crime at all. This has the effect, we believe,

of narrowing the above-stated scope of review. The overly broad test does not seem to apply in that no conduct constitutionally protected from criminal sanctions is involved. Further, the second area of inquiry on the void for vagueness statutory test has less significance. A prosecutorial decision to seek imposition of the hard 40 sentence is more akin to the decision of whether or not to seek invocation of the sentence enhancement provision of K.S.A. 1991 Supp. 21-4504, only a great many more safeguards against arbitrary and discriminatory enforcement are contained in the statutes relative to hard 40 sentencing.

We turn now to the particular aggravating factors at issue herein. Aggravating factor No. 2 is: "The defendant knowingly or purposely killed or created a great risk of death to more than one person." Defendant contends this provision is vague because "great risk" is not defined. Defendant argues great risk is either vague or should be construed to apply only to situations where the great risk to another person was contemporaneous with the homicide. We do not find the aggravating factor to be vague on its face or improperly applied to the facts herein. Sylvester was stabbed repeatedly and told he was going to die. He and Rose Ann were kidnapped and transported in a vehicle. Their assailants discussed the need for a weapon with which to kill both Sylvester and Rose Ann. Sylvester, despite having 27 stab wounds, managed to escape from the vehicle and his captors before the other victim was taken from the vehicle and killed. A continuous chain of events was in progress. There was ample evidence for the jury to conclude that Sylvester would have been killed along with Rose Ann if he had not escaped or if he did not die from his stab wounds prior to reaching the final destination. The conduct herein is well within the statutory language.

Aggravating factor No. 5 states: "The defendant committed the crime in order to avoid or prevent a lawful arrest or prosecution." Defendant cites a number of cases involving death penalty statutes which limit this factor to situations where the elimination of a witness was proven to be the dominant reason for the slaying. See *Ex Parte Johnson,* 399 So. 2d 873 (Ala. 1979); *People v. Bigelow,* 37 Cal. 3d 731, 209 Cal. Rptr. 328, 691 P.2d 994 (1984); *Doyle v. State,* 460 So. 2d 353 (Fla. 1984); *People v. Brownell,* 79 Ill. 2d 508, 404 N.E.2d 181 (1980).

For reasons previously stated, these cases have limited value to our consideration herein. This statutory factor is not vague or overly broad on its face. When applied to the facts herein, we see no problem with it either. When Sylvester escaped, covered with blood, his captors had no way of knowing whether or not he would survive to report the crimes involved or would be too frightened to identify the assailants. Further, Rose Ann, by defendant's own testimony at the sentencing proceeding, was subject to additional crimes Sylvester knew nothing about—anal sodomy and multiple rapes. The jury could well have found she was killed to avoid or prevent a lawful arrest or prosecution.

Factor No. 6 is: "The defendant committed the crime in an especially heinous, atrocious or cruel manner." In support of his position, defendant cites *Maynard v. Cartwright*, 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988), wherein the same language in a *death penalty statute* was held to be unconstitutionally vague. However, a later decision by the Court of Criminal Appeals of Oklahoma in *Foster v. State*, 779 P.2d 591 (Okla. Crim. 1989), noted the unconstitutional vagueness problem in *Maynard v. Cartwright* and held that the vagueness problem was satisfied with the inclusion of an additional instruction to the jury that the "term 'heinous' means extremely wicked or shockingly evil; 'atrocious' means outrageously wicked and vile; 'cruel' means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of the sufferings of others." 779 P. 2d at 592. The *Foster* definitions of heinous, atrocious, and cruel were included verbatim in the trial court's instructions to the jury herein.

We find the contention that this aggravating factor is unconstitutionally vague in the context of the hard 40 legislation to be without merit and especially so in light of the definitions included in the instructions herein. It would be impossible to devise a laundry list of particular forms of killing that would encompass the intended subject. Thus, the statute has to rely on adjectives. As applied to the facts herein, there is no problem either. The forensic evidence established major trauma to virtually all parts of Rose Ann's body. There was no estimate of how many times she was stomped upon. Blood found in multiple locations also established a lengthy period of assault and a slow death. The

adjectives heinous, atrocious, and cruel are extremely apropos herein. This is certainly no borderline case for the application of this factor.

## BURDEN OF PROOF ON AGGRAVATING FACTORS VERSUS MITIGATING FACTORS

For his next issue, the defendant contends the State failed to meet its burden of proof to establish aggravating factors. Included within this issue are a number of points.

First, defendant contends that the evidence presented at the sentencing hearing by the State was insufficient to support the jury's findings relative to aggravating factors. In this regard, defendant raises a technical argument. At the sentencing hearing the State made a motion to introduce as its evidence all the evidence admitted at trial. The trial court's response to this was, "Thank you." The State offered no additional evidence. Defendant contends that inasmuch as the trial court did not formally grant the motion, there was no evidence before the jury as to aggravating factors. We do not agree.

As previously discussed in an earlier issue, the procedural format for sentencing proceedings pursuant to K.S.A. 1991 Supp. 21-4624 provides that the jury shall be the trial jury unless sufficient jurors, including alternates, are unavailable. The reason for this is obvious—the trial jury has heard the trial testimony and seen all exhibits. This material is already before the jury and need not be repeated.

K.S.A. 1991 Supp. 21-4624(3) provides:

"In the sentencing proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 21-4625 and amendments thereto and any mitigating circumstances. Any such evidence which the court deems to have probative value may be received regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. Only such evidence of aggravating circumstances as the state has made known to the defendant prior to the sentencing proceeding shall be admissible, and no evidence secured in violation of the constitution of the United States or of the state of Kansas shall be admissible. No testimony by the defendant at the sentencing proceeding shall be admissible against the defendant at any subsequent criminal proceeding. At

the conclusion of the evidentiary presentation, the court shall allow the parties a reasonable period of time in which to present oral argument."

New or additional evidence may be presented under the above statute to the trial jury. Obviously, if a new jury has been impaneled the State must present all evidence it wishes considered. Here, when asked to proceed, the State could simply have stated that it was relying on the trial evidence and would present no additional evidence. No additional act by the State was necessary for the trial evidence to be before the trial jury for its consideration at the sentencing proceeding. Hence, a formal admission by the trial court of the evidence previously introduced at trial was unnecessary.

For his next point within this issue, defendant contends that the jury's verdict at the sentencing proceeding was the result of passion or prejudice, that the aggravating factors were not proven, and that the mitigating factors outweighed the aggravating factors.

K.S.A. 1991 Supp. 21-4627 provides:

"(1) A judgment of conviction resulting in a mandatory term of imprisonment pursuant to K.S.A. 1990 Supp. 21-3401 and 21-3401a, and amendments thereto, shall be subject to automatic review by and appeal to the supreme court of Kansas in the manner provided by the applicable statutes and rules of the supreme court governing appellate procedure. The review and appeal shall be expedited in every manner consistent with the proper presentation thereof and given priority pursuant to the statutes and rules of the supreme court governing appellate procedure.

"(2) The supreme court of Kansas shall consider the question of sentence as well as any errors asserted in the review and appeal and shall be authorized to notice unassigned errors appearing of record if the ends of justice would be served thereby.

"(3) With regard to the sentence, the court shall determine:

    (a) Whether the mandatory term of imprisonment was imposed under the influence of passion, prejudice or any other arbitrary factor; and

    (b) whether the evidence supports the findings that an aggravating circumstance or circumstances existed and that any mitigating circumstances were insufficient to outweigh the aggravating circumstances.

"(4) The court shall be authorized to enter such orders as are necessary to effect a proper and complete disposition of the review and appeal."

Defendant's claim that the verdict was the result of passion and prejudice is just that—a bare conclusory statement in the language of the statute. No facts or particularized claims are asserted in regard thereto. Nevertheless, we have reviewed the

record and find no basis upon which we could conclude that the mandatory term of imprisonment was imposed under the influence of passion, prejudice, or any other arbitrary factor.

We turn now to the area of mitigating factors. K.S.A. 1991 Supp. 21-4626 provides:

"Mitigating circumstances shall include, but are not limited to, the following:

"(1) The defendant has no significant history of prior criminal activity.

"(2) The crime was committed while the defendant was under the influence of extreme mental or emotional disturbances.

"(3) The victim was a participant in or consented to the defendant's conduct.

"(4) The defendant was an accomplice in the crime committed by another person, and the defendant's participation was relatively minor.

"(5) The defendant acted under extreme distress or under the substantial domination of another person.

"(6) The capacity of the defendant to appreciate the criminality of the defendant's conduct or to conform the defendant's conduct to the requirements of law was substantially impaired.

"(7) The age of the defendant at the time of the crime.

"(8) At the time of the crime, the defendant was suffering from post-traumatic stress syndrome caused by violence or abuse by the victim."

Here, again, in his brief defendant gives us no clue as to what mitigating factors he is contending were established. Searching through the record, it would appear that mitigating factors Nos. 1 and 7 could be considered to have been established (no significant history of prior criminal activity and his age of 21 years). As to factor No. 4, defendant's testimony at the sentencing proceeding was to the effect he was a bystander in the stomping to death of Rose Ann. His bloody pant legs and the evidence of his active participation in the robbery and kidnapping of Rose Ann are in opposition to his testimony in this regard.

The only other area that might have any relevance to mitigating factors was testimony defendant had suffered a head injury as a child and was prone to shaking and tremors as a result thereof—although there does not appear to be any claim this had any bearing on his conduct relative to the incident in question.

The three aggravating factors found to be present by the jury and the evidence relative thereto has been discussed in the preceding issue and need not be repeated. We have no hesitancy in concluding that the evidence supports the findings of aggra-

vating circumstances and that any mitigating circumstances were insufficient to outweigh the aggravating circumstances. Indeed, under the facts herein any mitigating factors are not only outweighed by the aggravating factors, the aggravating factors overwhelm them. Further, we have examined the record thoroughly and reviewed the evidence in light of each aggravating factor singly and find that the mitigating circumstances are so weak that we would affirm the sentence even if only one of the aggravating circumstances would have been found constitutionally valid.

## SENTENCING PROCEEDING INSTRUCTION

The final issue raised by the defendant is that his proposed sentencing proceeding instructions were better than those given by the trial court and should have been given instead. The entire argument on this issue occupies approximately one page of defendant's brief. No particular instructions are singled out or reasons stated for their impropriety. After careful review, we conclude the instructions given by the trial court appear to be legally sufficient. The same cannot be said of those proffered by the defendant.

For informational purposes it should be noted that while no PIK instructions relative to hard 40 sentencing proceedings have been published, there is a draft of proposed instructions covering the subject in the office of the Judicial Council, and copies of same are available to members of the state judiciary who request them.

The judgment is affirmed in part and reversed in part.