No. 68,445

STATE OF KANSAS, *Appellee*, v. EDWIN WILLIS, JR., *Appellant.*

(864 P.2d 1198)

Opinion filed December 10, 1993.

*Stephen R. Zinn*, deputy appellate defender, argued the cause, and *Lucille Marino*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the brief for appellant.

*Timothy J. Chambers*, county attorney, argued the cause, and *Robert T. Stephan*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: The two primary issues for review concern a defendant's right to confront a witness who appears at trial by deposition and the appropriate hard 40 sentencing instruction under K.S.A. 1992 Supp. 21-4625(6). We also comment on the admission of photos of the victim, the absence of an instruction on involuntary manslaughter, and the interplay of instructing on mitigating and aggravating factors during a hard 40 sentencing hearing.

Edwin Willis, Jr., was convicted of the premeditated first-degree murder of his wife. K.S.A. 1992 Supp. 21-3401. The trial court, in a separate sentencing proceeding, followed the jury's recommendation and imposed a mandatory 40-year term of imprisonment. Our jurisdiction is under K.S.A. 1992 Supp. 21-4627 (automatic review of a mandatory hard 40 sentence).

Willis made no objection to the deposition at trial. The standard of review on the deposition issue is influenced by Willis' constitutional right of confrontation. We are required to determine beyond a reasonable doubt whether the admission of the deposition had little if any likelihood of changing the trial result. *State v. Knapp*, 234 Kan. 170, Syl. ¶ 7, 671 P.2d 520 (1983). We are unable to make such a determination.

We reverse on the witness confrontation issue and remand for a new trial. We also provide new instruction language for a hard 40 sentencing proceeding under K.S.A. 1992 Supp. 21-4625(6).

## Facts

Willis, his wife Debra, and their four children lived in a trailer park in rural Reno County. Willis was repairing his truck on September 14, 1991, the date of the homicide. He began drinking beer around 11:00 a.m. and continued through the day. Willis testified that Debra, twice that evening, accused him of drinking. She smelled a can of pop he was drinking and grabbed him by the shirt. He put up his hand to free himself and Debra fell backwards to the ground. According to Willis, Debra was not hurt and walked off. He did not see her again. Willis reported to a sheriff's deputy that his wife was missing.

Debra's decomposed body was found 12 days later under a bridge four and one-half miles from her home. The area under

the bridge had not been flooded between her death and the discovery of the body. The body was identified through the use of dental records. An autopsy was conducted by Dr. W. Wike Scamman. Extensive postmortem deterioration and maggot infestation were consistent with his conclusion that the victim had been dead in a warm environment for 13 days. The autopsy report states that there was "[n]o evidence of traumatic death, although strangulation, smothering or poisoning cannot be excluded and are a likely cause of death."

Willis became a suspect in the murder investigation. One of the detectives investigating the case testified that Willis was asked toward the end of an interview how Debra had died and whether she had suffocated. Willis replied that "it could have possibly been from when he went to the body, knelt down next to the body and had his face next to her face and kicked some piling of sand in her breathing areas of her mouth and nose." Willis denied that he either intentionally pushed sand in her face or choked or strangled her. Detective Hagen testified that Willis said that he had attempted resuscitation by opening her mouth, cleaning the sand out, blowing into her mouth four or five times, and making some chest compressions. At trial (held on May 11-13, 1992), Willis denied playing a role in his wife's death. He indicated that the detectives' testimony concerning his statements were not true.

A deposition of Dr. Scamman taken three days before trial was read to the jury. Willis did not object. Willis was represented by counsel during the taking of Dr. Scamman's deposition. However, Willis was not present, nor had he waived his right to be present.

Dr. Scamman indicated that due to the extensive deterioration of the body he was unable to determine the cause of death. Dr. Scamman was told by the prosecutor that the Kansas Bureau of Investigation located sand in Debra's larynx, hyoid, and the left bronchus. The prosecutor during the deposition, asked Dr. Scamman whether such a finding would be consistent with a smothering that would occur by placing a person's head down in loose sand, and Scamman replied, "Yes, it could be." The following interchange occurred:

"Q. [Prosecutor] Would you expect to find sand within a person's lungs, in a normal autopsy situation?

"A. [Dr. Scamman] No. It would kind of depend on the amount, if she was thrown—thrown off of a bridge, it could be—and her face stuck in the sand, it could be some sand would have gone into the nasal pharynx, and possibly into the trachea. The other thing is, there were a lot of maggots down in the lungs, as well; they could have carried some sand down. If they went across the sand crawling down into the lungs, they could have, I suppose, taken some sand down into the bronchi. But I wouldn't expect very much sand could be carried down in that manner."

After finding Willis guilty, the jury heard testimony in a separate hard 40 sentencing proceeding. The jury found that Willis, under K.S.A. 1992 Supp. 21-4625(6), had committed the crime in an especially heinous, atrocious, or cruel manner and the existence of the 21-4625(b) aggravating circumstance was not outweighed by any mitigating circumstances.

### Willis' Confrontation Rights

Willis asserts that his absence during the deposition of Dr. Scamman deprived him of his right under the Sixth Amendment and § 10 of the Kansas Constitution Bill of Rights to confront all witnesses against him. He further contends that his failure to waive his right violated K.S.A. 22-3211(7) ("[w]henever the court authorizes the taking of a deposition, other than a deposition upon written interrogatories, the court shall make a concurrent order requiring that the defendant be present when the deposition is taken") and K.S.A. 22-3405 ("[t]he defendant in a felony case shall be present at the arraignment, at every stage of the trial including the impaneling of the jury and the return of the verdict, and at the imposition of sentence, except as otherwise provided by law"). We agree.

No hearing was held on the need for Dr. Scamman's deposition. The only comment at trial as to the reason for admitting the deposition testimony was a statement by the trial judge that Dr. Scamman "is unable to be here." (See K.S.A. 22-3211(8) for a list of circumstances permitting the use of deposition testimony.) We indicated in State v. Busse, 231 Kan. 108, Syl. ¶ 2, 642 P.2d 972 (1982), that a defendant can waive the right to be present at a deposition as long as the waiver is made freely and voluntarily, with full knowledge of the possible consequences and with

advice of counsel. There was no showing in the case at bar that Willis was informed of his right to be present at Dr. Scamman's deposition or that he waived this right. The absence of an objection by trial counsel is not binding upon Willis under these facts. See *Crease v. State*, 252 Kan. 326, Syl. ¶ 4, 845 P.2d 27 (1993).

K.S.A. 22-3211(3) provides that the prosecuting attorney may apply to the court for an order authorizing the taking of the deposition of an unavailable witness. The court, on such application, "*shall* set the matter for hearing and *shall order the defendant to be present* at such hearing." (Emphasis added.) K.S.A. 22-3211(7) mandates that the court order defendant to be present *at the deposition*. Willis contends that the prosecutor's failure to apply to the court for authorization to take the deposition means that a court order authorizing the taking of the deposition does not exist and a concurrent order requiring Willis' presence at the deposition was never made. Consequently, he asserts that the testimony was inadmissible hearsay under K.S.A. 1992 Supp. 60-460(c)(1) because the deposition was not taken in compliance with law. A bench inquiry during appellate argument probing whether the State or Willis initiated the deposition was unsuccessful. The prosecutor responded that Willis wanted it, the State arranged it, and both counsel drove to Topeka to depose Dr. Scamman.

Because Willis' confrontation rights were denied, we must find beyond a reasonable doubt, if we affirm the trial court, that his absence and the admission of the deposition had little if any likelihood of changing the result of the trial. *Crease*, 252 Kan. 326, Syl. ¶ 5. We are unable to do so. The Sixth Amendment to the Constitution of the United States provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." In *Pointer v. Texas*, 380 U.S. 400, 403, 13 L. Ed. 2d 923, 85 S. Ct. 1065 (1965), the Supreme Court held that this is a fundamental right and is made obligatory on the states by the Fourteenth Amendment. Similarly, § 10 of the Bill of Rights of the Kansas Constitution secures to the accused in all criminal prosecutions the right "to meet the witness face to face."

Dr. Scamman's testimony was crucial to the State's theory that Willis intentionally murdered his wife by holding her head down

in the sand. During his deposition, Dr. Scamman was examined by the State concerning his autopsy report.

> "Q. Doctor, I am handing you what we have marked as State's Exhibit 1, and ask if that is a copy of your report.
> A. Yes, it is.
> Q. Your final diagnosis states that: '. . . Strangulation, smothering or poisoning cannot be excluded, and are a likely cause of death.' Since you prepared this report, have you changed that opinion in any way?
> A. No."

The prosecutor sought to bolster the sand theory with Scamman's testimony that the presence of sand in the larynx, hyoid, and bronchus would be consistent with smothering. The sand theory was advanced during the prosecutor's closing argument: "How did Debra Willis die? . . . I think the evidence does indicate how she was killed. That she was smothered by her head being placed down in the sand. That is why the sand is in the larynx, in the hyoid and in the right bronchus."

Willis had a right to be confronted by Dr. Scamman. The essence of assisting in one's defense depends upon being confronted with the evidence and witnesses. See *Coy v. Iowa,* 487 U.S. 1012, 1017, 101 L. Ed. 2d 857, 108 S. Ct. 2798 (1988) (face to face meeting essential to fairness). Willis' right to be present during Dr. Scamman's deposition was fundamental to a fair trial. The pathologist's conclusions concerning possible causes of death were an integral part of the State's case.

We considered an accused's constitutional right to confront witnesses in *State v. Hooks,* 202 Kan. 68, 446 P.2d 770 (1968). Hooks was charged with grand larceny for stealing money from a cash register. As part of the State's case, the deposition of Eula Gregory (a resident of Oklahoma) was read into evidence over Hooks' objection. The deposition related the details of a similar "till-tapping" incident in a store where Eula worked as a clerk. Hooks was not present at the taking of the deposition. Retained counsel was present and cross-examined the witness extensively. Hooks' confrontation rights under the United States and Kansas constitutions were violated. We ordered a new trial. 202 Kan. at 69-71.

We identify an additional problem with the use of Dr. Scamman's deposition. The procedures for taking depositions outlined

in K.S.A. 1992 Supp. 60-230(e) (required to be used in criminal actions under K.S.A. 22-3211[6]) were not followed. Dr. Scamman did not sign his deposition. The record does not indicate either that it was submitted to him to read or that he waived review.

We approved in *State v. Staab*, 230 Kan. 329, 337, 635 P.2d 257 (1981), Judge Spencer Gard's commentary that although signing a deposition is not extremely important, reading the deposition is crucial. The witness is the only one who can waive the reading requirement. The court reporter in *Staab* had made an appointment with the witness to read the transcript. The witness failed to keep the appointment. We determined that these circumstances constituted a waiver of the reading requirement. No such waiver is present in the case at bar.

The State responds that defense counsel failed to object to either the introduction of Scamman's deposition or to the manner in which the deposition was taken. According to the State, the trial court indicated that the pathologist was unavailable and Willis concurred with that finding and ratified the procedure through his failure to object.

. The State observes that we "will not for the first time consider issues on appeal which have not been presented or determined in the district court," quoting *State v. Kelly*, 204 Kan. 717, Syl. ¶ 1, 466 P.2d 351 (1970). The State stresses that even if we consider the deposition issue, any admission error was harmless. The State asserts that Willis has failed to affirmatively show either that he was prejudiced or that the outcome of the trial would have been different if the deposition had not been admitted.

The failure of Willis' trial counsel to object to the admission of the deposition testimony does not necessarily preclude our review. Although ordinarily we will not consider an issue which has not been raised in the trial court, we have the power to do so in exceptional circumstances. In Willis' case, consideration of the new issue is necessary to serve the interests of justice and to prevent a denial of fundamental rights. *State v. Clemons*, 251 Kan. 473, 483, 836 P.2d 1147 (1992).

The State suggests that the autopsy report was admissible under K.S.A. 22a-235 and that the deposition merely restates the findings of the report; consequently, the admission of the deposition could not have had an impact on the trial's outcome. According

to the State, the autopsy report indicated that smothering was a likely cause of death; consequently, the deposition only adds the fact that the discovered sand was consistent with the smothering conclusion. Furthermore, the State emphasizes that the only new information within the deposition concerned the alternate ways in which the sand could have entered Debra's body. The State asserts that the sand entry information was beneficial to Willis, so he cannot claim prejudice.

We have observed repeatedly that under the Kansas and United States Constitutions the right of the accused to a face-to-face confrontation while the accuser is testifying is fundamental. *State v. Chisholm,* 245 Kan. 145, 149-50, 777 P.2d 753 (1989). A primary interest secured by the Sixth Amendment confrontation clause is the right of cross-examination. *State v. Hamons,* 248 Kan. 51, 62, 805 P.2d 6 (1991). See *Ohio v. Roberts,* 448 U.S. 56, 63, 65 L. Ed. 2d 597, 100 S. Ct. 2531 (1980).

The *Roberts* discussion of unavailability and reliability serves as a useful guide for the constitutional confrontation clause analysis in the case at bar. 448 U.S. at 65. First, as Willis notes, the unavailability of Dr. Scamman was not explicitly demonstrated except for the statement of unavailability by the trial judge. The basis for the trial court's declaration of unavailability is absent from the record. We are unable to either consider the propriety of the trial court's conclusion in a manner similar to the analysis in *Staab,* 230 Kan. at 337, or to follow the unavailability test set out in *Roberts,* 448 U.S. at 65. Second, the reliability and trustworthiness of the deposition is in doubt. Dr. Scamman did not sign the deposition. The record is silent on whether he reviewed the deposition and waived the signature requirement. K.S.A. 1992 Supp. 60-460(c) relating to depositions and prior testimony does not apply in criminal actions when the accused is denied the right to meet the witness face to face.

Resolution of the confrontation issue turns on the question of whether Willis was prejudiced by the constitutional and statutory violations. We acknowledge the presence of other evidence linking Willis to the killing; however, a constitutional right is involved. The autopsy report's final diagnosis was inquired into by the State during the deposition. We are unable to determine beyond a reasonable doubt that the admission of the deposition

testimony had little, if any, likelihood of changing the result at trial. *Crease*, 252 Kan. 326, Syl. ¶ 5. We reverse and remand for a new trial.

## The Hard 40 Sentence

At the time of Willis' trial, neither our opinion in *State v. Bailey*, 251 Kan. 156, 834 P.2d 342 (1992), nor PIK Crim. 2d 56.01-B (1992 Supp.) were available for review by the trial court and counsel. The trial court's instruction did not contain the *Bailey* definitions of "heinous," "atrocious," or "cruel."

The trial court instructed the jury on the one applicable statutory aggravating circumstance (K.S.A. 1992 Supp. 21-4625[6]):

"You are instructed in arriving at your determination of punishment of Edwin Willis, you must first determine whether at the time this case was committed the following aggravated circumstance existed as to Edwin Willis beyond a reasonable doubt. The aggravated circumstance you may consider shall be limited to the following:
"1. The defendant committed the crime in an especially heinous, atrocious or cruel manner."

The trial court followed the jury's recommendation and imposed the hard 40 sentence.

## Vagueness

Willis contends that the aggravating circumstance which formed the basis for his hard 40 sentence has been found to be unconstitutionally vague by the United States Supreme Court. *Maynard v. Cartwright*, 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988). Willis observes that *Maynard* viewed the terms heinous, atrocious, and cruel as not adequately channeling or limiting a jury's discretion, thereby failing to protect a defendant from an arbitrary and capricious decision. *Maynard* is a death penalty case.

Willis recognizes that in *Bailey,* we rejected a claim that the K.S.A. 1992 Supp. 21-4625(6) aggravating factor is unconstitutionally vague in the context of the hard 40 proceeding. He observes that our reasoning relied, in part, on the fact that the terms had been defined in a manner which had been approved in *Foster v. State*, 779 P.2d 591 (Okla. Crim. 1989), *cert. denied* 497 U.S. 1032 (1990). He emphasizes that in *Shell v. Mississippi*, 498 U.S. 1, 112 L. Ed. 2d 1, 111 S. Ct. 313 (1990), a death

penalty case, the Court rejected the claim that definitions similar to those approved in *Bailey* satisfied vagueness problems.

Willis indicates that in the case at bar, the trial court failed to define the terms heinous, atrocious, or cruel. Consequently, he contends that "a jury recommendation which is based upon such unclear, ambiguous, and subjective terminology" failed to comport with due process or with the Eighth Amendment protection against cruel and unusual punishment. Willis reasons that the analysis in death penalty cases is instructive even though we have not recognized such precedents as controlling.

We reasoned in *Bailey* that "[m]ost of the cases involving the constitutionality of such post-trial [sentencing] proceedings arise in the context of the death penalty legislation and are, accordingly, of limited precedential value." 251 Kan. at 171. In *Lockett v. Ohio*, 438 U.S. 586, 605, 57 L. Ed. 2d 973, 98 S. Ct. 2954 (1978), the Court recognized the following:

"Given that the imposition of death by public authority is so profoundly different from all other penalties, we cannot avoid the conclusion that an individualized decision is essential in capital cases. The need for treating each defendant in a capital case with that degree of respect due the uniqueness of the individual is far more important than in noncapital cases. A variety of flexible techniques—probation, parole, work furloughs, to name a few—and various postconviction remedies, may be available to modify an initial sentence of confinement in noncapital cases. The nonavailability of corrective or modifying mechanisms with respect to an executed capital sentence underscores the need for individualized consideration as a constitutional requirement in imposing the death sentence."

Our rationale in *Bailey* regarding the precedential value of death penalty cases in the hard 40 context is consistent with *Lockett*. However, *Lockett* also may be read as supporting the contention that the relevant analysis from death penalty cases should be used when considering hard 40 issues because the "flexible techniques" and "postconviction remedies" also are absent in the hard 40 sentence.

We found in *Bailey*:

"[T]he contention that this aggravating factor [21-4625(6)] is unconstitutionally vague in the context of the hard 40 legislation to be without merit and especially so in light of the definitions included in the instructions herein. It would be impossible to devise a laundry list of particular forms of killing

that would encompass the intended subject. Thus, the statute has to rely on adjectives." 251 Kan. at 174.

We have followed *Bailey* in analyzing K.S.A. 1992 Supp. 21-4625(6). See *State v. Cromwell*, 253 Kan. 495, 514, 856 P.2d 1299 (1993); *State v. Phillips*, 252 Kan. 937, 946-47, 850 P.2d 877 (1993); *State v. Kingsley*, 252 Kan. 761, 791, 851 P.2d 370 (1993); and *State v. Walker*, 252 Kan. 279, 300-01, 845 P.2d 1 (1993). *Cromwell, Walker, Kingsley,* and *Phillips* defined the terms heinous, atrocious, and cruel in a manner similar to that endorsed in *Bailey*.

The hard 40 sentence should be reserved for special cases (it is for the jury and the trial court to determine if Willis' case may be one of them). Otherwise, the legislature would have mandated the hard 40 sentence in all first-degree murder cases.

We revisit the *Bailey* analysis of *Maynard v. Cartwright*, 486 U.S. 356, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988) and *Foster v. State*, 779 P.2d 591. The *Bailey* reasoning appears in the comments to PIK Crim. 2d 56.01-B-Murder in the First Degree— Mandatory Minimum 40 Year Sentence—Aggravating Circumstances. We alluded to difficulties with the *Bailey/Foster* analysis in *Phillips*, 252 Kan. at 946. We did not include the complete instruction from *Foster* in our discussion in *Bailey*. *Phillips* did not consider the difficulties alluded to because we found the issue was not before us. Counsel and the defendant in *Phillips* had affirmatively approved the instruction as given. 252 Kan. at 946. Willis' counsel did not object to the 21-4625(6) instruction.

The jury in *Foster* received the definitional instruction discussed in *Bailey* plus the following: "The phrase 'especially heinous, atrocious, or cruel' is directed to those crimes where the death of the victim was preceded by torture of the victim or serious physical abuse." 779 P.2d at 592-93. The torture/physical abuse aspect of the revised Oklahoma instruction appears to have been crucial to the *Foster* court's conclusion that the instruction did not violate the constitution. The torture/physical abuse instruction is absent from the instructions that we have approved in *Bailey* and its progeny. The case at bar may be the "borderline case" mentioned in *Bailey*, 251 Kan. at 175, in that the manner of death was different than the stomping in *Bailey*, 251 Kan. at 159, and *Walker*, 252 Kan. 279 (*Bailey's* companion case), the

kicking and stomping in *Phillips,* 252 Kan. at 938, or the knocking the victim unconscious, multiple stabbing in the chest, and throat slitting in *Kingsley,* 252 Kan. at 762.

We have reversed the case at bar on witness confrontation grounds. The case is remanded for retrial. We select this opinion to supplement the *Bailey*/K.S.A. 1992 Supp. 21-4625(6) instruction. We adopt the instruction to be used in: (1) Willis' retrial, (2) hard 40 sentencing cases after the date of this opinion, and (3) all cases on appeal as of the date of this opinion in which vagueness of a 21-4625(6) sentencing instruction has been asserted as an issue on appeal.

### Sentencing Under the Hard 40 Statute

Apparently Kansas is the only state with the hard 40 sentence of mandatory imprisonment. We suggest that the hard 40 sentence exists as a legislative compromise between the proponents and opponents of the death penalty. We have reviewed several cases since enactment of the hard 40 sentence in 1990. The legislature intended the hard 40 mandatory term of imprisonment to apply to a defendant responsible for a particular type of premeditated murder. The prosecutor initiates the possibility of the hard 40 sentence by filing a written notice and serving it at the time of arraignment. K.S.A. 1992 Supp. 21-4624. The experience gained from exercising appellate review of *Bailey* and its progeny dictates that we supplement the previously approved K.S.A. 1992 Supp. 21-4625(6) instruction now found at PIK Crim. 3d 56.01-B.

We adopt as constitutionally acceptable the following hard 40 sentencing instruction to use under K.S.A. 1992 Supp. 21-4625(6):

> The State of Kansas contends that the following aggravating circumstances are shown from the evidence:
>
> The defendant committed the crime in an especially heinous, atrocious, or cruel manner. The term "heinous" means extremely wicked or shockingly evil; "atrocious" means outrageously wicked and vile; "cruel" means pitiless or designed to inflict a high degree of pain, utter indifference to, or enjoyment of, the sufferings of others.
>
> *A crime is committed in an especially heinous, atrocious, or cruel manner when the perpetrator inflicts serious mental anguish or serious physical abuse before the victim's death. Mental anguish includes a victim's uncertainty as to [his] or [her] ultimate fate.* (Emphasis indicates the new language.)

The new language is adopted from *Walton v. Arizona*, 497 U.S. 639, 654, 111 L. Ed. 2d 511, 110 S. Ct. 3047 (1990). We have added "serious" as a modifier to "mental anguish" and to "physical abuse." In *Walton*, the Supreme Court observed that it had expressed approval of a definition that would limit Oklahoma's "especially heinous, atrocious, or cruel" aggravating circumstance to murders involving "some kind of torture or physical abuse." 497 U.S. at 654-55. The Supreme Court in *Walton* points out that when it endorsed the "some kind of torture or physical abuse" language in *Maynard*, 486 U.S. at 364-65, it also stated that such a construction was not the only one "that would be constitutionally acceptable." 497 U.S. at 655. The *Walton* opinion instructs that "[t]he construction given by the Arizona Supreme Court to the cruelty aspect of the Arizona aggravating circumstance is virtually identical to the construction we approved in *Maynard*." 497 U.S. at 655. We have reviewed the *Foster* language ("some kind of torture or physical abuse") approved in *Maynard* and elect, with slight modification, the Arizona version approved in *Walton*. We have added the word "serious" as a modifier to "mental anguish" and to "physical abuse" to convey our blending of the *Foster/Walton* analysis.

We note that the PIK Crim. 3d 56.01-B instruction as well as the comment will require revision to conform with the new language adopted herein.

### Instructions, Burden of Proof, and Mitigating Circumstances

Willis contends that two instructions, Nos. 3 and 5, incorrectly required the jury to find the existence of mitigating factors by unanimous vote. He argues also that the verdict form contained a similar unanimity requirement.

Willis discusses *Lockett v. Ohio*, 438 U.S. 586, and highlights the fact that the Court determined that "[a]ny statute that prevents the sentencer from giving independent mitigating weight to such considerations is 'unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.' 438 U.S. at 605." Willis believes that the jury was effectively precluded from considering mitigating factors by the use of the beyond a reasonable doubt standard.

We rejected a similar contention in *State v. Walker*, 252 Kan. at 307, and do so here.

## Involuntary Manslaughter

Defense counsel requested that the jury be instructed on involuntary manslaughter, asserting that the killing was unintentional. The State did not comment on the request. The trial court denied the request, explaining:

"The court . . . will instruct on murder in the first degree, murder in the second degree, and voluntary manslaughter. And the record speaks for itself as far as the court is concerned. There is no evidence under which I felt that this could go to the jury on involuntary manslaughter and I will not instruct on that."

We need not comment further because upon retrial the propriety of giving lesser included offense instructions will depend on the evidence introduced.

## Photographs of the Victim's Body

Defense counsel objected to the admission of photographs of Debra's body taken at the crime scene. Willis does not take issue with four of the photographs (State's Exhibits 12, 13, 14, and 15) which show the body's location. However, he believes that State's Exhibits 11 and 16, which are close-ups of the body, are revolting and serve no valid or legitimate purpose. Willis recognizes that we rarely find admission of gruesome photos to be an abuse of discretion. Willis asserts that Exhibit 11 neither illustrates the nature and extent of the injuries inflicted by the killer nor corroborates the testimony of any witness regarding the cause of death.

We question the relevancy of Exhibit 11 based on the current record. Exhibit 11 is a photograph of the body after it had been moved. It shows a decomposed and decaying corpse displayed on a white sheet. Exhibit 11 does not depict the body as it was found. The ravages of time and the elements have reduced the body to its exhibited state. Upon retrial, relevancy as well as any other appropriate admissibility questions will be ruled on by the trial court as it exercises its discretion in determining admissibility. See *State v. Minski*, 252 Kan. 806, 817, 805 P.2d 809 (1993).

Reversed and remanded for new trial.