(991 P.2d 905)

No. 77,294

STATE OF KANSAS, *Appellee,* v. MARIO GARZA, *Appellant.*

Opinion filed January 29, 1999.

*Craig Durham*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, for the appellant.

*Steven J. Obermeier*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Carla J. Stovall*, attorney general, for the appellee.

Before Lewis, P.J., Elliott, J., and Richard B. Walker, District Judge, assigned.

Walker, J.: Mario Garza appeals his conviction of one count of sale of marijuana and one count of possession of marijuana without a drug tax stamp.

Garza's convictions resulted from a controlled buy made at the home of Melissa Shelby. In exchange for reduced charges on earlier drug crimes, Shelby was working with police and allowed the drug buy to occur at her residence. Several police officers observed the events leading up to the buy and were able to identify Garza as the person who was at Shelby's home, but the only person to actually witness the buy was Shelby.

Police were also in possession of a tape recording made of Shelby's telephone conversations with Garza.

Garza was charged with the crimes over 1 year after the buy actually occurred. To say the least, Shelby was an extremely reluctant witness. She failed to appear at the first preliminary hearing and appeared at a second scheduled hearing only after being arrested and held as a material witness. Both at the preliminary hear-

ing and the trial, Shelby stated that she remembered little or nothing about the buy. The admission of her testimony and the tape-recorded conversations were the subject of extensive pretrial motion activity by Garza, including two motions in limine and one motion to suppress arguing that Shelby should not be permitted to testify. All these motions were denied by the trial court.

A few days before trial, the court held a hearing to determine whether Shelby would assert her Fifth Amendment privilege against self-incrimination. Neither Garza nor his counsel was notified of the hearing. Shelby indicated at the hearing that she would invoke her Fifth Amendment rights, and the trial court held that she could not be called as a witness unless the State granted her immunity.

On the date of trial, Garza and his counsel were notified of the prior hearing with Shelby at which she had invoked her Fifth Amendment rights. Garza's counsel objected to the fact that he had not been notified of the prior hearing, and the court promptly held another hearing involving Garza's counsel but without Garza being personally present. At that hearing, the State offered Shelby immunity, and the trial court held that she could no longer assert her Fifth Amendment privilege.

In spite of Shelby's lack of recall, the trial court held she was available for cross-examination and allowed her to testify. Because of her "inability" to recall the events, the court admitted the tape-recorded conversations between Shelby and Garza. Understandably, during the trial there were a number of bench conferences outside the presence of the jury regarding Shelby's testimony. Garza was convicted of the charges.

After the trial, the judge and counsel for both parties met with jurors to discuss the case. One juror asked why so many bench conferences had been held regarding Shelby's testimony. They informed the juror that Shelby was a reluctant witness who claimed to have no recall of the buy. The juror then stated that an advance sheet of the Kansas Reports tabbed to a case was left in the jury room and that the tabbed case dealt with the same issue. The juror went on to say that the jurors had read and discussed the case.

Subsequently, Garza moved for a new trial based upon juror misconduct or, in the alternative, to have the jury recalled for further questioning. The trial court denied both motions.

Garza first argues that the trial court erred in denying his motion for a new trial or, in the alternative, his motion to recall the jury. This court's review of an order denying a new trial or a motion to recall a jury is limited to whether the trial court abused its discretion. *State v. Franklin*, 264 Kan. 496, 498, 958 P.2d 611 (1998). If a constitutional right has been violated, however, a judge's discretion is limited. *Saucedo v. Winger*, 252 Kan. 718, 731, 850 P.2d 908 (1993). Then, there is a greater need for the judge to articulate the reasons for his or her "discretionary" decision. 252 Kan. at 731.

An exercise of discretion which results in an error of constitutional magnitude may not be held to be harmless unless an appellate court is willing to declare a belief that the error was harmless beyond a reasonable doubt. 252 Kan. at 732. A trial court abuses its discretion when a defendant can show that (1) the jury's act constituted misconduct and (2) the misconduct substantially prejudiced the defendant's right to a fair trial. *State v. Goseland*, 256 Kan. 729, 735, 887 P.2d 1109 (1994).

The basis for Garza's allegation of juror misconduct is the fact that an advance sheet was left in the jury room, tabbed to a case which was directly on point to the issues in his case, and the jurors admitted to reading and discussing the case. The case involved was *State v. Johnson-Howell*, 255 Kan. 928, 881 P.2d 1288 (1994). The case involved a witness who, like Shelby, refused to testify at trial. The witness, like Shelby, had invoked his Fifth Amendment privilege and then refused to testify. As in the present case, over defense counsel's hearsay objections, the witness' prior out-of-court statements were admitted into evidence. The Supreme Court found that the trial court had erred in admitting the witness' testimony pursuant to K.S.A. 60-460(a) because the witness refused to testify and was therefore not available for cross-examination. The Supreme Court ultimately found, however, that the error was harmless in view of the overwhelming evidence of the defendant's guilt. *Howell-Johnson*, 255 Kan. at 952.

Garza correctly points out that prior to reading this case, the jury was left to wonder why Shelby could not recall the events of the drug buy and why there were so many bench conferences outside the jury's presence. He argued that after reading the case, the jury could "fill in the blanks" and speculate that Shelby had made incriminating statements similar to the witness in *Howell-Johnson* and that these statements were being kept from them.

The trial court itself admitted to leaving the advance sheet—tabbed to the *Howell-Johnson* case—in the jury room during pretrial motions. The State admits that the case was on point, but argues that all the case does is "kind of explains the legal process . . . how the Court process works." Further, the State argues that as a matter of law, the trial court is forbidden from inquiring into the thought processes of the jurors and, therefore, the jurors cannot be recalled.

This argument fails. The Kansas Supreme Court has held that the statutory prohibition against impeachment of a jury does not apply when a party claims that his or her constitutional right to a fair trial was violated by jury misconduct. *Saucedo*, 252 Kan. 718, Syl. ¶ 2.

Further, the fact that the case "explained the legal process" is precisely why the reading of the case by the jurors was prejudicial. The jury is supposed to learn about the legal process or how the court works only through jury instructions. The reading of this case—a case directly on point and used to support motions in the case—went far beyond those instructions. The State's argument that it would be "far more detrimental to a fair trial for a jury to look at a dictionary defining legal terms," referring to the Supreme Court's ruling in *State v. Duncan*, 3 Kan. App. 2d 271, 593 P.2d 427 (1979), that the reading of the definition for the legal term "assault" in a dictionary did not prejudice a criminal defendant, is specious at best.

To compare a case in which the jury looked up the word "assault" to a case in which the jurors read a decision directly on point to one of the most litigated issues in a trial defies common sense. *Cf. State v. Goseland*, 256 Kan. 729. Moreover, it was the trial court itself that left the advance sheet in the jury room, making the error

even more grievous. The State also argues that other jurisdictions have held that the mere reviewing of a reported case does not amount to sufficient evidence to necessitate a new trial. See *United States v. Hill*, 688 F.2d 18 (6th Cir.), *cert. denied* 459 U.S. 1074 (1982); *State v. Powell*, 400 N.W.2d 562 (Iowa 1987); *Annaratone v. State*, 399 So. 2d 825 (Miss. 1981); *State v. Taylor*, 917 S.W.2d 222 (Mo. App. 1996).

While this is true, these cases are easily distinguishable from the present case. In each of those cases the jury found extrinsic legal materials and read through them. In one case, the jury looked up the appropriate punishment for a defendant, although the jury was responsible for the guilt phase of the trial not the punishment phase. In *none* of the cases, however, did the jurors read a case directly on point to the issues in the trial from extrinsic legal materials left in the jury room *by the court itself.*

Shelby's testimony—or lack of testimony—was the central issue in this case. The jurors' reading of the *Johnson-Howell* case, which explained the law regarding the admission of her testimony and her ability to invoke her Fifth Amendment privilege, was clearly misconduct and substantially prejudiced Garza. The trial court's refusal to grant a new trial or to recall the jury to determine whether the extrinsic evidence substantially affected the jury's verdict was error which requires this court to reverse and remand for a new trial. See *Saucedo v. Winger*, 252 Kan. at 733.

Next, Garza argues that the district court erred in holding two hearings outside of his presence, thereby violating his rights to due process and confrontation of a witness. Whether a defendant's right to confrontation and presence has been violated is a question of law. A question of law is subject to de novo review. See *State v. Donlay*, 253 Kan. 132, Syl. ¶ 1, 853 P.2d 680 (1993). A defendant has a constitutional and statutory right to be present at every stage of his or her trial. United States Constitution, Sixth Amendment; K.S.A. 22-3405.

The first hearing that was held outside of Garza's presence was a hearing before trial to determine what Shelby's testimony would be and to determine whether she would invoke her Fifth Amendment privilege. Neither defense counsel nor defendant was noti-

fied of the hearing. This court has held that a defendant's presence at in-chambers conferences concerning questions of law is not essential to a fair and just determination of those questions. *State v. Rhoads,* 20 Kan. App. 2d 790, 794, 892 P.2d 918 (1995). Whether Shelby would testify was not only a question of law, it was the central question around which both the State and defense cases revolved.

In *State v. Willis,* 254 Kan. 119, 124, 864 P.2d 1198 (1993), the Supreme Court held that where a deposition of the key witness in a murder trial was taken outside of the presence of the defendant, his confrontation rights were violated. As in *Willis,* there is no showing here that Garza was notified of his right to be present at the hearing. Additionally, Shelby was the only witness who actually saw the drug buy and, for this reason, her testimony was vital to the determination of Garza's guilt or innocence.

If Garza's confrontation rights were denied, in order to affirm the trial court's ruling, this court must find beyond a reasonable doubt that his absence had little if any likelihood of changing the result of the trial. See *Willis,* 254 Kan. at 123. As in *Willis,* this court would be hard pressed to do so.

"The essence of assisting in one's defense depends upon being confronted with the evidence and witnesses." *Willis,* 254 Kan. at 124. Shelby's testimony was crucial to the State's case. Throughout the proceedings, Garza objected to Shelby's testimony. He objected both through motions and orally. Whether Shelby would testify and whether she would invoke her Fifth Amendment privilege was the central focus of the pretrial motions in this case and most of the bench conferences during the trial.

Shelby was the only direct witness to the crime. Because Shelby's testimony was central to both the prosecution and the defense in this case, this court cannot say beyond a reasonable doubt that Garza's absence from the hearing had little, if any, likelihood of changing the result of the trial. Accord *Willis,* 254 Kan. at 126-27.

Having concluded that the defendant's absence from the first hearing violated his constitutional rights, it follows that his absence from the second hearing—held the first day of trial and regarding the same issues—also violated his rights.

Finally, Garza argues that the introduction of Shelby's tape-recorded conversation with him was inadmissible hearsay and that its admission violated his right to confront all witnesses against him.

Shelby's testimony at the preliminary hearing and trial was consistent. She stated again and again that she could not recall the events related to the controlled buy. Because of her lack of recall, the State sought to introduce the tape-recorded conversation between Shelby and Garza pursuant to K.S.A. 60-460(a), previous statements of a person present, or 60-460(j), as a declaration against interest. The trial court found that Shelby was available for cross-examination and admitted the testimony as a declaration against interest.

A district judge has wide discretion in determining the admissibility of hearsay evidence under the declaration against interest exception. *State v. Cooper*, 20 Kan. App. 2d 759, 761, 892 P.2d 909, *rev. denied* 257 Kan. 1093 (1995). K.S.A. 60-460(j) contemplates that certain out-of-court statements are admissible in court if the judge, using judicial discretion, finds that the proffered hearsay statement was at the time of the assertion so far contrary to the declarant's interest or subjected the declarant to civil or criminal liability to the extent that a reasonable person in declarant's position would not have made the statement unless he or she believed such statement to be true. Additionally, the party offering the evidence must also make a showing of trustworthiness by the declarant. 20 Kan. App. 2d at 762.

If, however, a declarant has no good reason to believe that the assertion will bring harm or believes the assertion is more likely to cause benefit rather than harm, the assertion will not be excepted from the hearsay rule. 20 Kan. App. 2d at 763. The tape-recorded conversation between Shelby and Garza took place *after* she had already been arrested and *after* she had agreed to cooperate with the police. Shelby agreed to the controlled buy and made the statements in her role as a confidential informant. The statements did not subject her to further prosecution and, in fact, benefitted her. It is difficult to understand how statements which *benefitted* Shelby—she was allowed to plead to a lesser charge for her crimes—were a declaration against interest.

Shelby's statements were also inadmissible pursuant to K.S.A. 60-460(a). A statement previously made by a person who is present at the hearing and available for cross-examination is admissible as an exception to the general rule that hearsay is inadmissible. K.S.A. 60-460(a). This exception does not apply in the present case because, for all intents and purposes, Shelby refused to testify. See *State v. Johnson-Howell*, 255 Kan. at 937; *Cooper*, 20 Kan. App. 2d at 763. The State did not seek to admit the testimony under any of the other hearsay exceptions and, even if it had, they do not appear to apply.

The trial court abused its discretion in admitting the tape-recorded testimony where the statements were not against Shelby's interest and where she claimed to have no recall of the buy. Having already determined that Garza's Confrontation Clause rights were violated, it is unnecessary to determine whether those same rights were violated by allowing the admission of a witness who was "unavailable" for cross-examination.

Garza's convictions are reversed and the case is remanded for a new trial.

Reversed and remanded with directions.