No. 28,331.

THE STATE OF KANSAS, *Appellee,* v. JOHN DEMAIN, *Appellant.*

(275 Pac. 139.)

Opinion filed March 9, 1929.

*John A. Etling,* of Kinsley, and *Walter L. Bullock,* of Dodge City, for the appellant.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, and *E. C. Minner,* county attorney, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: The defendant, John Demain, was convicted of grand larceny for the theft of a load of wheat, and appeals.

It appears that two men, Snyder and Stegman, landlord and tenant, had about 9,000 bushels of wheat in a bin on a farm in Ford county at some distance northwest of Offerle, Edwards county. Defendant lived about two and one-half miles from this wheat bin. Stegman had been hauling wheat from that bin, and in cleaning up spilled grain he had gathered up some cobs and a bit of wood and threw them into the bin. On the night of January 12, 1928, an old Ford truck belonging to defendant was found stalled in a ditch at the roadside with a 55-bushel load of wheat in it, about a mile from the Snyder-Stegman wheat bin. About a load of wheat was missing from the bin, and in the load of wheat on defendant's truck were some of the cobs and bits of wood which Stegman had thrown into the wheat when he had tidied up around the bin. It was a cold night and the radiator of defendant's car had been drained. The same night defendant appeared in Offerle and told a deputy sheriff of Ford county he had seen the truck at the side of the road on his way home from town that night but did not recognize it as his own, and when he got home he discovered his truck was missing and went back to the truck by the roadside and discovered it was his, and as the night was cold he had drained the radiator and came back to town to report. This deputy sheriff and another went to the truck and discovered from certain indications that the radiator must have been drained for a much longer period than the short interval between the time when defendant said he drained it and the time he told the deputy sheriff about it. Several deputy sheriffs of Ford and Edwards counties, who concerned themselves with the larceny of the wheat on the night it happened or during the next two days, intimated rather pointedly to defendant that he had stolen the wheat, and urged him to plead guilty, assuring him it would be better for him, and that to stand trial would cost him a lot of money and he would be found guilty

anyway, and one of them said he would recommend a parole. Thus induced, defendant admitted the theft of the wheat.

At the trial the jury retired while the trial court heard the evidence concerning the confession and the circumstances under which it was given. It concluded that the confession was voluntarily made. The jury were then recalled and the evidence concerning defendant's confession was submitted for their consideration.

A verdict of guilty followed, and defendant assigns error in admitting the evidence concerning the confession, and in the instructions pertaining to that confession given and refused. He argues that the state did not prove that the confession was voluntarily made. The pertinent testimony reads:

Oliphant, deputy sheriff of Edwards county, testifying:

"I said, 'John, if you are guilty of the crime, for goodness sake confess it and get it over with before it goes to trial. If it goes to trial it will cost you a lot of money and you will undoubtedly be worse off. If you did it, why for goodness sake confess it.'

"Cross-examination: . . .

"Q. You were accusing him of the crime? A. I told him it looks as though he done it.

"Q. That was the night before, was it? A. That was really Friday morning about three o'clock in the morning. . . .

". . . I says: 'Probably Mr. Stegman, if you will take the wheat back, put it back where it belongs, and ask—apologize to Mr. Stegman, Mr. Stegman will probably drop it. . . .'

"Q. What did he say then? A. He says: 'Do you suppose he would do that'? . . .

". . . I will talk to Mr. Stegman and he will probably not get out a warrant for you. . . .

"Q. He didn't confess it until after you had told him? A. I didn't say he done it—wanted to know—

"Q. Until you told him it would be quickest way out of the—cheapest way out? A. Yes, sir. . . .

"Q. You told him also it would cost several — couple thousand dollars, didn't you? A. I don't know as I told him, I didn't know, couldn't tell how much it would cost. I said probably cost you a thousand dollars or more.

"Q. Did you then tell him if he would confess he would be paroled? A. I didn't say; I said maybe he could be paroled.

"Q. Did you say you would recommend a parole? A. Yes, sir."

Bisbee, a deputy sheriff of Ford county, testified that he was present when the defendant was arrested on Saturday morning, January 14, about 11 o'clock on the highway four miles west of Offerle. With him was Levi Davis, Leo Krumrey and Oliphant. On

cross-examination Bisbee testified that Oliphant told the defendant the best thing he could do was to make a clear breast of it and tell a straight story, and defendant said that was what he was willing to do. He did not hear Oliphant say that it would be easier on him to make a confession, nor did he hear him tell the defendant that he would recommend a parole. He heard Oliphant tell the defendant "that you were implicated in this; that is your truck, you drove out there, you loaded this wheat out, you better do it," and the defendant said, "I will make a clean breast of it."

Defendant's version of the confession was somewhat different. He testified:

"Mr. Krumrey [another deputy sheriff] said it looked to him like best thing for me to do was to settle up. I told him if I did it would bring it onto me that I stole the wheat. I told him I wouldn't do it under the circumstances.

"Q. What did they say? A. They said if I taken the wheat back to Mr. Stegman and apologize to Mr. Stegman, that is all there would be said about it.

"Q. Did they say there wouldn't be any warrant issued? A. Said there wouldn't be any. . . .

"Q. Then later was there a warrant issued for you? A. Yes, that afternoon. . . .

"Q. What was the conversation that you had with him [Oliphant]? A. He told me the thing looked bad for me; best thing for me to do was just settle up if I was guilty. . . .

"Q. What did he [Bisbee] say to you? A. He said that the goods was on me to plead guilty, for it would cost me a lot of money, and they probably would parole me if I plead guilty. . . .

"Q. What else was said there, if anything? A. Yes, they promised to parole.

"Q. Who promised it to you? A. Mr. Bisbee.

"Q. What did he say? A. He promised to parole if I would plead guilty.

. . . . . . . . . . . . . .

"THE COURT: Q. You say some one of the officers told you to take it where this man Stegman told you to take it—that is perhaps all there would be to it? A. Yes, sir.

"Q. Did you do that? A. No, sir.

"THE COURT: That is all."

It appears that the trial court conscientiously discharged its preliminary duty to decide for itself in the first instance whether the confession or admission of guilt was voluntarily made. (*State v. Hayes*, 106 Kan. 253, 187 Pac. 675.) Once the court had satisfied itself of its voluntary character, the evidence of the confession and the circumstances under which it was given were properly submitted to the jury for such credence and significance as they saw fit to

attach thereto. The fact that the trial court had concluded for itself that the confession was voluntary did not bind the jury. They were free to decide that question as they saw fit. The testimony which the jury saw fit to believe touching what the deputy sheriffs said to defendant does not fairly bear an interpretation that constraint, duress, or promise of immunity or of lenity induced defendant to confess. In *State v. Kornstett*, 62 Kan. 221, 227, 61 Pac. 805, it was said:

"It is well settled that an extrajudicial confession will not be received in evidence unless it has been freely and voluntarily made. If it has been extorted by fear or induced by hope of profit, benefit or amelioration, it will be excluded as involuntary. However, mere advice or admonition to the defendant to speak the truth, which does not import either a threat or benefit, will not make a following confession incompetent."

To the same effect was *State v. Dilgar*, 111 Kan. 794, 797, 208 Pac. 620, and cases cited therein. See, also, 16 C. J. 721 *et seq.*

The promise of leniency or other substantial benefit which will wholly exclude a confession of guilt induced by it must have been made or sanctioned by some person in authority and must have been of such a character as would be likely to persuade the accused to make a false confession. To this effect are *Commonwealth v. Aston*, 227 Pa. St. 112, and *Rice v. The State*, 22 Tex. App. 654, and other cases cited in note to 16 C. J. 726. In *Wilson v. State*, 19 Ga. App. 759, it was said:

"If the inducement is sufficient by possibility to elicit an untrue confession of guilt then the confession is to be rejected; otherwise it is to be admitted under proper instructions." (Syl. ¶ 4.)

If the word "probability" were substituted for "possibility" we should regard this Georgia rule as sound and proper. We note, but cannot approve, the rule announced in the English case of *Rex v. Dunn*, 4 Car. & P. 641, decided many years ago, to this effect:

"Any person's telling a prisoner that it will be better for him to confess will exclude a confession made to that person, although that person was not in any authority as prosecutor, constable, or the like." (Syl.)

Here the deputy sheriff of Edwards county expressed the opinion to defendant that if he would return the wheat and apologize to its owner, probably the latter would "drop it"—that is, would not prosecute—and in any event he, the Edwards county deputy sheriff, would recommend a parole. This deputy sheriff of Edwards county

was altogether without official concern with this crime, the venue of which lay in Ford county. We do not regard the Edwards county deputy sheriff's expression of opinion of the improbability of a prosecution if the wheat were returned and an apology made to its owner, nor his promise to recommend a parole, as likely to induce this defendant to make a false confession of guilt, and no error was committed in permitting the evidence of the confession and the circumstances under which it was given to be submitted to the jury.

Error is also assigned on the instructions given and refused which dealt with the confession. The criticism of the one given is that it did not tell the jury what to do in the event they found it was not freely and voluntarily made. It did tell the jury that if voluntarily made, without threats or promises of indemnity from punishment or of lighter punishment, such confession or admission was competent evidence on the question of defendant's guilt or innocence of the crime charged, and that the weight and degree of credit to be given to the evidence pertaining thereto rested wholly in the discretion of the jury. Mayhap the instruction given was not artistically framed, but it was a substantially correct statement of pertinent law, and its submission and the rejection of one formulated by defendant on the same general proposition resulted in no error.

A final argument is that the entire case rested on the confession of the accused. We think not. If a jury had found the defendant guilty on the other evidence outlined above and the inferences fairly deducible therefrom, with no intimation of a confession, it would have been impossible for an appellate court to have disturbed a judgment based thereon, under familiar and numerous precedents like *State v. Lister*, 121 Kan. 524, 247 Pac. 846, and *State v. Lawellin*, 125 Kan. 599, 264 Pac. 1035.

The judgment is affirmed.