(593 P.2d 427)

No. 50,394

STATE OF KANSAS, *Appellee,* v. DAVID LEE DUNCAN, *Appellant.*

Opinion filed April 20, 1979.

*William J. Kelly,* of Independence, for appellant.

*Glenn E. Casebeer, Jr.,* assistant county attorney, *Paul D. Oakleaf,* county attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before ABBOTT, P.J., REES and MEYER, JJ.

REES, J.: Defendant was convicted on three counts of aggravated assault on a law enforcement officer (K.S.A. 21-3411) and one count of burglary (K.S.A. 21-3715). Upon imposition of K.S.A. 21-4504, the Habitual Criminal Act, the sentences imposed were three concurrent terms of not less than ten nor more than forty years for aggravated assault on a law enforcement officer and a consecutive term of not less than four nor more than twenty years for burglary. Defendant appeals.

We will briefly summarize relevant facts, first in summary and later as incident to our discussion of issues. Before daylight on December 23, 1977, defendant triggered a silent alarm in a pawn shop on the first floor of a business building in Independence, Kansas. Four officers responded; three were in uniform and one was in street clothes. During the events leading up to his arrest and while inside the building, defendant fired three rounds from a .357 magnum that were heard by the four officers. One shot was fired at officer Sutton from a distance of six to eight feet while he and the defendant faced one another through a west exterior window. The physical evidence established that the bullet lodged

in the window casing. After only such time as was required to release the safety, Sutton fired his shotgun twice through the window and into the building. Apparently defendant was not hit. The physical evidence also established that the second and third shots fired by defendant were at an inside back door hasp and padlock. One of the latter bullets passed through the door and was found in an adjacent parking lot to the south of the building after ricocheting off a brick wall at the south side of the parking lot. Shortly after firing at the back door, defendant broke out another west exterior window and Sutton saw him waving or pointing his gun toward officer Bynum. Bynum's back was to the defendant. Seeing defendant at this latter window and that his brother officer was in apparent peril, Sutton fired another round from his shotgun. Defendant received pellet wounds. After hearing the sounds of the breaking of the window and Sutton's last shot, Bynum immediately turned around, observed the wounded defendant at the window and with Sutton apprehended defendant.

The other two officers at the scene were officers Kolb and Lowry. Bynum was the officer not in uniform.

Relying on *Ladner v. United States,* 358 U.S. 169, 3 L.Ed.2d 199, 79 S.Ct. 209 (1958), defendant argues that one act of aggravated assault, defendant's shot at Sutton, cannot support his conviction on three counts of aggravated assault. In *Ladner,* the defendant fired one shotgun blast into the front seat of an automobile occupied by two federal agents. The defendant was charged and convicted on two counts of assault on federal officers. The United States Supreme Court held that "the single discharge of a shotgun alleged by the petitioner in this case would constitute only a single violation." 358 U.S. at 178.

*Ladner* is distinguishable insofar as it is directed at the State's allegations and interpretation of the evidence in the present case. The State contends there were three separate and distinct acts constituting aggravated assault—defendant fired one round at Sutton, fired two rounds at the back door, one of which it is said could have been at Lowry, and waved or pointed his gun in the direction of Bynum. Assaults with a firearm upon each of several law enforcement officers occurring during one episode, but at different times, constitute separate offenses of aggravated assault upon each of the law enforcement officers. *State v. Bradley,* 215 Kan. 642, Syl. ¶ 6, 527 P.2d 988 (1974).

Defendant next challenges the sufficiency of the evidence with regard to the counts of aggravated assault against officers Lowry and Bynum. Although somewhat otherwise posed in his brief and argument, this contention is multifaceted: (1) when defendant fired the three shots from within the building, he did not know of the presence at the scene of anyone other than Sutton, law enforcement officer(s) or civilian(s); (2) his shots at the back door were not attempts to do bodily harm to Lowry or Bynum or anyone else; (3) his single shot at or toward Sutton was an act that could be found to be one of aggravated assault but, if so, it was a single act that does not support convictions of aggravated assault on Lowry or Bynum; and (4) Bynum, with his back to defendant was unaware defendant waved or pointed his gun toward him and Bynum was not placed in immediate apprehension of bodily harm by reason of that particular conduct of the defendant.

The trial court instructions are not in the record on appeal. We must presume that as to Lowry and Bynum the jury was properly instructed concerning the necessary elements of proof for conviction of violation of K.S.A. 21-3411. These are found in PIK Crim. 56.15 and as here applicable they are as follows:

1. Defendant intentionally attempted to do bodily harm to [Lowry/Bynum];
2. Defendant had apparent ability to cause such bodily harm;
3. Defendant's conduct resulted in [Lowry/Bynum] being in immediate apprehension of bodily harm;
4. [Lowry/Bynum] was a uniformed or properly identified city law enforcement officer;
5. [Lowry/Bynum] was engaged in the performance of his duty;
6. Defendant used a deadly weapon.

Excluding the factor that the victim was a uniformed or properly identified law enforcement officer engaged in the performance of his duty, this itemization of the elements of the offense of aggravated assault has recently been restated in *State v. Nelson,* 224 Kan. 95, 97, 577 P.2d 1178 (1978).

Review of the evidence compels the conclusion that the first and third elements were not established as to Lowry and the third element was not established as to Bynum.

The physical evidence and the officers' necessary resulting

conclusion was that defendant's last two shots were at the locked back door of the pawn shop. Lowry was standing outside the building, at a distance to the south and west of the back door, when these shots were fired. Although investigation conducted after defendant's arrest showed that the shot that carried through the door passed near where Lowry had been standing, Lowry did not testify that at the time of the incident he thought either of the two shots was fired at him. He did not know that the bullet had passed near him until after the later investigation. Lowry testified that when he heard the first shot fired, the shot fired at Sutton through the pawn shop window, he took cover and was fearful for his life. There is no evidence that Lowry was in immediate apprehension of bodily harm when or after the shots were fired at the back door. To say there was evidence defendant intended to shoot at Lowry requires reliance upon speculation. There was neither direct evidence nor evidence upon which there was a reasonable inference that defendant saw Lowry standing outside the building. Lowry was standing in an ambiguously defined area to the south and west of the back door. To argue defendant might have been able to shoot at Lowry through the door at an angle requires, under the trial testimony, the assumption defendant stood in the doorway. This assumption is refuted by the testimony. The testimony failed to disclose how defendant could have seen Lowry or shot at him from inside the building.

As to Bynum, the evidence was that *Sutton* observed defendant waving the gun in the direction of Bynum and shot defendant before defendant could shoot Bynum. By his testimony, Sutton heard a loud noise which he initially thought was a gunshot but turned out to be defendant breaking the second window. Sutton quickly turned and fired at defendant when he saw defendant waving the gun in Bynum's direction. There is no evidence that *Bynum observed defendant waving the gun at him.* Sutton fired at defendant while Bynum was still facing away or just in the process of turning toward the window which defendant had broken. There was no testimony that Bynum was placed in immediate apprehension of bodily harm. Bynum did not see defendant wave the gun at him. The first time Bynum saw defendant was after he was shot by Sutton.

Again, we conclude the evidence was insufficient to establish a reasonable inference of guilt as to the counts of aggravated

assault on a law enforcement officer against Lowry and Bynum. In view of such a holding, we need not consider defendant's arguments that Lowry and Bynum were not properly identified as police officers as required by K.S.A. 21-3411. See *State v. Bradley,* 215 Kan. 642, Syl. ¶¶ 2, 3, 4.

Defendant's last point of error goes to the jury's alleged erroneous consideration of the definition of "assault" taken from a dictionary. At the hearing on the motion for new trial, a juror testified that some members of the jury were uncertain of the meaning of "assault" and that during a lunch break a juror looked up the definition of the word in a dictionary and reported its meaning to the jury when it reconvened. It is not permissible to inquire whether or not the dictionary definition of "assault" was given weight by the jury. K.S.A. 60-441.

In early Kansas cases, prejudice was presumed from jury misconduct such as consideration of dictionaries or almanacs not admitted into evidence. *State v. Schaben,* 69 Kan. 421, 426, 76 Pac. 823 (1904); *State v. Lantz,* 23 Kan. 728, 730 (1880). The State had the burden of establishing that the jury misconduct did not substantially prejudice the rights of the defendant. *State v. McNichols,* 188 Kan. 582, 589, 363 P.2d 467 (1961). However, somewhere along the line the burden has now shifted to the defendant to show the existence of substantial prejudice to his rights. *State v. Amey,* 218 Kan. 369, 371-372, 544 P.2d 334 (1975); *State v. Howard,* 224 Kan. 208, 212-213, 579 P.2d 702 (1978).

Defendant's argument that he was prejudiced by the jury's consideration of a dictionary definition of "assault" goes only to the difference between the elements of the crime of aggravated assault on a law enforcement officer as defined in K.S.A. 21-3411 and the elements of assault as defined by a dictionary. We agree that the difference in definitions is substantial, but the evidence of defendant's guilt of aggravated assault on Sutton was overwhelming if not irrefutable. Our reversal of defendant's convictions on the counts relating to Lowry and Bynum are for other reasons and we find the jury's misconduct not to be reversible error.

The judgments of conviction on counts 1 and 3 for aggravated assault on a law enforcement officer are reversed and the judgments of conviction on count 4 for aggravated assault on a law enforcement officer and count 5 for burglary are affirmed.