No. 59,245

STATE OF KANSAS, *Appellee*, v. RANDY W. BODTKE, *Appellant.*

(734 P.2d 1109)

Opinion filed March 27, 1987.

*Melissa Sheridan,* assistant appellate defender, argued the cause, and *Benjamin C. Wood,* chief appellate defender, was with her on the brief for appellant.

*C. William Ossmann,* assistant district attorney, argued the cause, and *Robert T. Stephan,* attorney general, and *Gene M. Olander,* district attorney, were with him on the brief for appellee.

The opinion of the court was delivered by

PRAGER, C.J.: This is a direct appeal from jury convictions of aggravated robbery (K.S.A. 21-3427) and an aggravated weapons violation (K.S.A. 21-4202). This case arose out of the robbery of the Medical Arts Center in Topeka on August 21, 1985, by a single robber armed with a knife. The robber obtained drugs from the pharmacist. There was no dispute in the case as to the manner in which the robbery occurred. The fact issue presented at trial was the identity of the defendant, Randy W. Bodtke, as the robber. The defendant was identified by the pharmacist on duty, Leland White, and also by Barbara Estes, a nurse who worked in the building and who identified the defendant as the man she observed in the hallway shortly before the robbery occurred.

The defendant denied any participation in the crime, claiming that he was home babysitting his children when the robbery occurred. The jury chose to believe the evidence presented by

the State and convicted the defendant on both charges. The defendant appealed.

The first point raised on the appeal is that defendant was denied effective assistance of counsel because the public defender, his appointed counsel, failed to investigate, interview witnesses, and have crucial witnesses testify. Defendant's claim of ineffective assistance of counsel was raised in his motion for a new trial, filed by newly appointed counsel. A hearing was held on defendant's motion and the issue of ineffective assistance of counsel was fully presented to the trial court. At the hearing on the motion, defendant testified he had a chest-length beard on the date of the robbery, August 21, 1985, and that he shaved off his beard two days after the robbery and three days before his arrest on August 26, 1985. Defendant's alibi was that he was at home babysitting his three children and did not leave the house until after the time the robbery occurred.

Defendant complained that he advised his trial counsel that at the time of the incident he was living with a woman named Dana who would be able to support his alibi. Also, he advised his counsel that Dana's oldest son might be a possible witness regarding the babysitting. Defendant further testified that he advised his trial counsel that his live-in girl friend, Dana, would testify that he had a full beard which he shaved off after the date of the robbery but before his arrest. Defendant also claimed that he advised his counsel that a friend named Dale and two bartenders could testify that defendant had not shaved off his beard until two days after the robbery. Stated simply, the defendant argues that all of these witnesses would have supported his testimony that he could not have been the robber because the robber was clean shaven and defendant had a full beard on the day the robbery took place.

It is important to note that none of these claimed witnesses appeared at the hearing on the motion for a new trial except his girl friend, Dana. Although Dana testified that the defendant had had a full beard and shaved it off, she could not say that he had a beard on the day the robbery occurred. In other words, her testimony was inconclusive and did not support the defendant's claim. At the hearing on the motion for a new trial, the defendant did not call to the stand his friend, Dale, his girl friend's oldest

son, or the two bartenders whom the defendant also claimed would have testified in regard to the defendant's having a full beard on the day of the robbery. Because none of these witnesses appeared, the trial court had no way of knowing whether testimony could have been presented at the trial which would have supported defendant's testimony.

In response to this testimony, the State called to the witness stand the public defender who had represented defendant at the trial. He testified that he had difficulty contacting Dana, but, when he did so, she could not help because she did not know when the defendant had shaved off his beard. The public defender also testified that he had spoken with the defendant's friend, Dale, and that he had discussed defendant's situation with Dale. Dale did indicate that he saw the defendant after the day of the robbery with a beard. The public defender gave Dale his card and said if he was willing to testify to that in court to show up at his office on the next Monday morning. Dale never showed up at the public defender's office. Thereafter, the public defender testified he made unsuccessful efforts to contact Dale by telephone. The public defender stated that he would have called Dale to the stand to testify about defendant's beard, if the witness had been willing to testify, but he knew about Dale's past criminal record and felt that Dale would not have been of any great help to the defendant.

The trial court denied the motion for a new trial, pointing out the identification testimony of the nurse was strong and convincing, and that defendant's proposed testimony would probably not have affected the outcome of the trial. The trial court stated that, looking at trial counsel's position at the time, it was not unreasonable for him to conclude that the defendant's live-in girl friend, Dana, who could not give a specific date as to when defendant had shaven his beard, would not have been of any help to the defense at the trial. Furthermore, the testimony of defendant's friend, Dale, would have been highly suspicious because of his unwillingness to testify. We have read the record in the case and concluded that the trial court did not err in denying the defendant's motion for a new trial on the basis of ineffective trial counsel. At the hearing on the motion for a new trial, not a single witness testified in a manner that would have

aided the defense. The trial court simply did not know whether such testimony existed. As to the testimony of the defendant's girl friend, Dana, it was clear that she would not have been of help because she could not say when defendant shaved off his beard.

In *Chamberlain v. State*, 236 Kan. 650, 694 P.2d 468 (1985), it was held that a convicted defendant's claim that defense counsel's assistance was so defective as to require reversal of a conviction requires that the defendant show, first, that counsel's performance was deficient and, second that the deficient performance prejudiced the defense so as to deprive the defendant of a fair trial.

"(a) The proper standard for judging attorney performance is that of reasonably effective assistance, considering all the circumstances. When a convicted defendant complains of the effectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

"(b) With regard to the required showing of prejudice, the proper standard requires the defendant to show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Syl. ¶ 3.

We have considered these principles and, in light of the factual circumstances shown in the record, we have concluded that the evidence presented by defendant on his motion for new trial failed to show that the actions of defendant's trial counsel fell outside the wide range of reasonable professional assistance or that defendant was deprived of a fair trial. We find no error on this point.

The second point raised by the defendant is that the trial court erred in instructing the jury as to the elements of aggravated robbery. The instruction required the State to prove beyond a reasonable doubt that the defendant was armed with a deadly weapon, "to wit: a knife." The record shows that the defendant

did not object to this instruction at the trial and a reversal cannot be had unless the instruction was clearly erroneous. In our judgment, the instruction was not clearly erroneous. The evidence was undisputed that the robber forcibly obtained drugs from the possession of the pharmacist while threatening the pharmacist with a knife described as having an unfinished pine handle and a blade 4 to 5 inches long. We find no error.

Defendant's third point on the appeal is that the trial court erred in instructing the jury as to the credibility of witnesses. The instruction given was longer and more detailed than PIK Crim. 2d 52.09, which is customarily given by the trial court in criminal cases. In our judgment, however, the instruction, as given, was not erroneous merely because it addressed the various factors for testing a witness's credibility. The instruction did not focus on or emphasize any particular factor and we do not believe that the jury could have been misled. The defendant did not object to the instruction at the time of trial, nor was this issue presented to the trial court. We find no basis for reversing the case on this point.

The final point raised by the defendant on the appeal is that the trial court lacked jurisdiction on the charge of aggravated weapons violation under K.S.A. 21-4202 because the information was fatally defective. Defendant, Bodtke, was convicted on Count 2, which charged that the defendant unlawfully, willfully, and knowingly carried on his person a knife with the intent to use the same unlawfully, the defendant having been convicted of a felony within five years preceding the violation. K.S.A. 21-4201 defines the offense of unlawful use of a weapon as knowingly carrying concealed on one's person, a dangerous knife or possessing with the intent to use the same unlawfully *against another*. The defendant maintains that the charge in this case was defective because it failed to allege that the defendant, Bodtke, possessed a dangerous knife with intent to use the same unlawfully *against another*.

At the trial, the prosecutor noticed that the information was defective after the evidence had been presented and, before closing argument, moved the court to make a correction to Count 2 to allege that the defendant knowingly possessed a dangerous weapon with the intention to use the same unlawfully *against*

*another.* The defendant did not object to the amendment, and the court granted leave to the State to amend the information. However, it is undisputed that the charge was never amended in writing and was left as originally drafted. The State argues that the defense did not object thereto and never raised the issue in the trial court.

In the recent case of *State v. Wilson,* 240 Kan. 606, 731 P.2d 306 (1987), it was held that an information which omits one of the essential elements of the crime it attempts to charge is jurisdictionally and fatally defective, and any conviction of that offense must be reversed. Furthermore, a conviction based upon an information which does not sufficiently charge the offense for which the accused is convicted is void. In *State v. Wilson,* it was further held that an information must be in writing and that where leave is granted to the prosecution to amend an information, the amendment must be made either (a) by filing an amended information, or (b) by striking out or writing in the pertinent matter by interlineation upon the document on file.

It is clear that in the present case the information was defective because it failed to allege an essential element of an aggravated weapons violation—that the defendant knowingly possessed a dangerous knife with an intent to use it unlawfully *against another.* Although the prosecutor moved to amend and was granted leave to amend, the prosecutor failed either to file a written amended information or to interlineate the words "against another" in the information then on file. Under the circumstances, we hold that *State v. Wilson* is controlling, and that the defendant's conviction on the charge of aggravated weapons violation under Count 2 must be reversed and set aside. We note, however, that the sentence imposed in Count 2 was ordered to run concurrently with the sentence imposed for aggravated robbery as charged in Count 1. Thus, the controlling sentence of 15-20 years for aggravated robbery, Count 1, remains the controlling sentence in the case.

The judgment of the district court is affirmed in part and reversed in part in accordance with the views expressed in this opinion.