No. 70,302

STATE OF KANSAS, *Appellee,* v. PAUL L. GOSELAND, *Appellant.*
(887 P.2d 1109)

Opinion
filed December 22, 1994.

*Steven R. Zinn,* deputy appellate defender, argued the cause, and *Max Row-insky,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, were on the brief for appellant.

*David Lowden,* assistant district attorney, argued the cause, and *Nola Foulston,* district attorney, and *Robert T. Stephan,* attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: This is a direct appeal by Paul Goseland from his conviction by a jury of possession of cocaine, in violation of K.S.A. 65-4127a(a). It was his third conviction for possession of

cocaine, and he was sentenced pursuant to K.S.A. 65-4127a(a) to imprisonment for life.

On August 9, 1992, while on routine patrol in the early morning hours, Officers Ruffner and Henninger saw a motorcycle being driven in excess of the speed limit. The officers also observed that the motorcycle had no taillights and the license tag had expired. With the emergency lights on their patrol car activated, the officers pursued the motorcycle. The motorcycle failed to stop and, while in close pursuit, Officer Henninger saw the driver of the motorcycle remove his left hand from the handlebars, dig for something in front of him, and then drop a small blue bag to his side. When Goseland, who was the motorcycle driver, stopped, he was arrested and read his *Miranda* rights. The blue bag was retrieved and found to contain white powder. A small amount of the powder tested with a field kit registered positive for cocaine.

At the jail, Goseland again was read his *Miranda* rights, and he said he would not answer questions. While in the booking area completing the paperwork, Officer Henninger remarked to Goseland, "[Y]ou need to find something else to do with your life." Goseland responded, "[N]o, I'll not stop selling dope, because then you all would not have anything to do." Goseland's motion to suppress the statement was denied after a hearing.

At trial, a KBI chemist testified that the blue bag contained two packets of cocaine which weighed a total of one-third gram. A detective testified that cocaine commonly is sold for personal use in approximately one-quarter gram quantities with a street value of $25 to $30. The jury found Goseland guilty of one count of possession of cocaine.

It was stipulated that Goseland had twice before been convicted of possession of cocaine. His prior convictions were in September 1991 and March 1992. He was sentenced to life imprisonment. The district court declined to request preparation of another Topeka Correctional Facility (TCF) report and advised counsel that "I am considering this a final judgment."

Goseland first contends the district court should have excluded his response to Officer Henninger's remark that he should find something else to do with his life.

"The standard of review of a district court's determination where an inquiry on the admissibility of a defendant's statement was conducted and the statement was admitted into evidence is narrow. This court will accept the district court's determination if it is supported by substantial competent evidence. [*State v. Law,*] 214 Kan. 643, Syl. ¶ 1 [, 522 P.2d 320 (1974)]." *State v. Dixon,* 252 Kan. 39, 52, 843 P.2d 182 (1992).

In the present case, the district court conducted a hearing on Goseland's motion to suppress the statement he made in response to Officer Henninger's remark and concluded that the statement should be admitted into evidence. Thus, this court's task is to determine whether the ruling is supported by substantial competent evidence.

Goseland urges that the focus, in fact the sole inquiry, should be whether Officer Henninger's remark "constitute[s] an interrogation within the meaning of *Miranda.*" He relies on *Rhode Island v. Innis,* 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). The United States Supreme Court stated:

"We conclude that the *Miranda* safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they *should have known* were reasonably likely to elicit an incriminating response." 446 U.S. at 300-02.

Innis was arrested on suspicion of using a sawed-off shotgun to rob a taxicab driver. He was advised of his *Miranda* rights, and he stated that he wanted to speak to a lawyer. He was transported to the police station in a patrol car by three officers. En route, two of the officers carried on a conversation about the importance

of searching for the shotgun because it presented a danger for the many handicapped children who attended school nearby. Innis interrupted the conversation and stated that he would show them where the shotgun was located. He led them to a field and pointed out the shotgun under some rocks. 446 U.S. at 294-95. Innis, the Supreme Court concluded, was not interrogated within the meaning of *Miranda* because he was neither expressly questioned nor "subjected to the 'functional equivalent' of questioning." 446 U.S. at 302.

The heart of Goseland's argument is his assertion that Officer Henninger formulated his remark for the purpose of eliciting an incriminating response. Goseland does not offer proof in support of his assertion. He states that there is no other explanation for Officer Henninger's remark. This ignores Officer Henninger's testimony that he advises nearly all arrestees that they need to find something else to do with their lives and that he did not expect the type of response Goseland gave. It also fails to take into account that this was the third time within a matter of months that Goseland had been booked for possession of cocaine. Goseland also cites Officer Ruffner's follow-up as showing Officer Henninger's bad motive. He does not explain how one proves or tends to prove the other, and it is not obvious. Goseland has not called to the court's attention any evidence that the officers were acting in concert.

As he does on appeal, Goseland relied on *Innis* in his pretrial motion to suppress. Goseland necessarily argued that Officer Henninger's remark was more nearly an interrogation than was the *Innis* officers' conversation about the safety of handicapped children. The district court judge disagreed, commenting that Officer Henninger's remark would be substantially less likely to evoke an incriminating response than the conversation which took place in the police car with Innis. The district court concluded that Officer Henninger's remark was not likely to evoke an incriminating response and refused to suppress Goseland's statement.

The State cites *State v. Newfield*, 229 Kan. 347, 357, 623 P.2d 1349 (1981), as showing that this court, like the United States

Supreme Court, has considered police remarks more borderline than Officer Henninger's and concluded that they did not constitute interrogation. Newfield, who had been questioned before about a murder, was telephoned by a KBI agent and asked to come to the local police station to answer more questions. At the station, Newfield was advised of his *Miranda* rights, refused to give his fingerprints, and answered some questions about the victim's car. 229 Kan. at 349-50. Newfield stated that he wanted to talk to a lawyer before he talked to the agents any more, and the following events occurred:

"The defendant's request for an attorney occurred at 3:13 p.m. Following his request, Agent Humphrey responded that the defendant would have to tell his attorney the truth before his attorney could help him, and that if Newfield wanted to talk to the KBI agents about Grant Avery's death, it would have to be now because his attorney would tell him not to talk to the KBI. Agent Lyons then told defendant to think it over, that the people of Peabody would probably think more of Newfield if he told the truth about Grant Avery's death than if he didn't. At approximately 3:15 p.m., Agent Humphrey advised Newfield that he was under arrest for the kidnapping and murder of Grant Avery. Humphrey then told Newfield that he was now entitled to take Newfield's fingerprints and proceeded to obtain his kit so that he could do so.

"At 3:18 p.m. Newfield advised Humphrey and Lyons, 'Get your pencil. I'm going to tell you all about it.' " 229 Kan. at 350-51.

This court concluded that Newfield's conduct constituted a waiver of his rights and that the agents' remarks did not constitute interrogation. With respect to Humphrey's statement, the court stated that it "may have been made with the intent to obtain a confession from defendant, but logic would dictate an opposite result" and concluded that it "is not so coercive as to render the waiver and confession involuntary." 229 Kan. at 359. With respect to Lyons' statement, the court concluded that it

"would fall within the rule that a 'mere exhortation or adjuration to speak the truth, or the mere suggestion to an accused that he confess, will not exclude a confession.' 29 Am. Jur. 2d, Evidence § 548, pp. 603-04; 3 Wharton's Criminal Evidence § 674, (13th ed. 1973). In *State v. Kornstett*, 62 Kan. 221, 227, 61 Pac. 805 (1900), this court stated:

'It is well settled that an extrajudicial confession will not be received in evidence unless it has been freely and voluntarily made. If it has been extorted by fear or induced by hope of profit, benefit, or amelioration, it will be excluded as

involuntary. However, mere advice or admonition to the defendant to speak the truth, which does not import either a threat or benefit, will not make a following confession incompetent.'

Accord, *State v. Demain*, 127 Kan. 716, 720, 275 Pac. 139 (1929)." 229 Kan. at 359.

The State also contends that Goseland failed to renew his pretrial motion to suppress by objecting, as required by *State v. Milo*, 249 Kan. 15, 18, 815 P.2d 519 (1991), when his statement was introduced at trial. Goseland's counsel objected when Officer Henninger began testifying about the statement, but the objection was not related to the ground for his pretrial motion to suppress, which is the ground raised in this appeal. Counsel stated: "Objection, Your Honor. I object to this or, I think he needs to say what he said, not ad lib or add anything." The objection was sustained, and the witness was admonished to testify "as to what you remember the defendant saying at this—at the booking desk." Without further objection, the witness testified: "He then stated to me, no, I'll not stop selling dope, because then you all would not have anything to do." In arguing that Goseland is precluded from asserting his Fifth Amendment argument on appeal, the State relies on *State v. Young*, 14 Kan. App. 2d 21, 36-37, 784 P.2d 366, *rev. denied* 245 Kan. 788 (1989). In that opinion, Judge (now Justice) Davis wrote:

"The record shows that defendant renewed his pretrial objection to James' statements on the basis of hearsay. The record does not show that defendant objected on the basis of K.S.A. 60-455. Because defendant did not object to these statements on this ground at trial, he may not assert this ground on appeal as a basis for reversal. K.S.A. 60-404; *State v. Garcia*, 233 Kan. 589, 608, 664 P.2d 1343 (1983)."

In *State v. Toney*, 253 Kan. 651, 862 P.2d 350 (1993), the defendant filed a motion to suppress evidence obtained from the stop of a vehicle in which the defendant was a passenger. The defendant contended the officer did not have probable cause. The court denied the motion, and the defendant failed to object at trial to the admission of the evidence except as to chain of custody. In finding the propriety of the vehicle stop was not properly before the court on appeal, the court stated:

> "When a motion to suppress evidence is denied, defendant must make a timely objection at trial, at the introduction of the evidence, specifying the ground for the objection in order to preserve the issue on appeal. [Citations omitted.] Moreover, defendant may not object to the introduction of evidence on one ground at trial, and then assert a different objection on appeal. [Citations omitted.]" 253 Kan. at 656.

In the present case, too, one objection was made at trial and another issue presented on appeal. An appellant cannot challenge the admissibility of evidence which was the subject of a pretrial motion unless an objection on the same ground as the earlier motion is made when the evidence is introduced at trial. In the present case, the specific objection to Officer Henninger's testimony raised in this appeal was raised by Goseland's pretrial motion but was not renewed at trial.

For this reason and for the reason that the district court's refusal to suppress Goseland's statement is supported by substantial competent evidence, we find no error.

Goseland next contends that a juror's consulting a dictionary for a definition of "reasonable" is ground for a new trial.

> "In recent years, this court has consistently adhered to the rule in both civil and criminal cases that juror misconduct is not a ground for reversal, new trial, or mistrial unless it is shown to have substantially prejudiced a party's rights. The party claiming prejudice has the burden of proof." *State v. Fenton*, 228 Kan. 658, Syl. ¶ 1, 620 P.2d 813 (1980).

The district court determined that Goseland had not provided evidence from which it could be concluded that his rights were substantially prejudiced by one juror looking up the word "reasonable."

This court's review is limited to whether the district court abused its discretion. *Taylor v. State*, 251 Kan. 272, 277, 834 P.2d 1325 (1992). "The test of the trial court's abuse of discretion is whether no reasonable person would agree with the trial court. If any reasonable person would agree, appellate courts will not disturb the trial court's decision." 251 Kan. 272, Syl. ¶ 3.

The evidence which was presented to the district court was an affidavit of Goseland's trial counsel "detailing his conversation with that juror as well as another juror." We do not find the

affidavit in the record. Thus, what is known about the evidence before the district court must be inferred from the briefs and those parts of the record referenced in the briefs. It amounts to nothing more than what already has been stated—during deliberations one juror looked up a dictionary definition of "reasonable."

Goseland suggests that the district court could have conducted a hearing to ascertain whether the one juror shared the dictionary definition with the other jurors and, if so, what effect, if any, it had on them. He does not suggest, however, that a hearing was required as a matter of law. For the purpose of developing the facts, trial counsel easily could have included any information in his affidavit about the one juror's discussing the dictionary definition with the others. Such information, however, seems not to have been included in the sworn statement.

The State contends that the scope of any hearing would have been narrowed beyond utility by K.S.A. 60-441, which provides:

"Upon an inquiry as to the validity of a verdict or an indictment no evidence shall be received to show the effect of any statement, conduct, event or condition upon the mind of a juror as influencing him or her to assent to or dissent from the verdict or indictment or concerning the mental processes by which it was determined."

Thus, an inquiry in the circumstances of this case might have included whether the one juror told the others about the dictionary definition but not whether or how such information figured into their deliberations. In other words, the State's assertion that the hearing would have been limited to information which Goseland's counsel's affidavit could have contained seems to be correct.

Goseland relies principally on *State v. Duncan*, 3 Kan. App. 2d 271, 593 P.2d 427 (1979). Duncan contended that he was prejudiced by the jurors' consideration of a dictionary definition of "assault." Pertinent portions of the opinion of the Court of Appeals follow:

"At the hearing on the motion for new trial, a juror testified that some members of the jury were uncertain of the meaning of 'assault' and that during a lunch break a juror looked up the definition of the word in a dictionary and reported

its meaning to the jury when it reconvened. It is not permissible to inquire whether or not the dictionary definition of 'assault' was given weight by the jury. K.S.A. 60-441.

. . . .

"Defendant's argument that he was prejudiced by the jury's consideration of a dictionary definition of 'assault' goes only to the difference between the elements of the crime of aggravated assault on a law enforcement officer as defined in K.S.A. 21-3411 and the elements of assault as defined by a dictionary. We agree that the difference in definitions is substantial, but the evidence of defendant's guilt of aggravated assault on Sutton was overwhelming if not irrefutable. Our reversal of defendant's convictions on the counts relating to Lowry and Bynum are for other reasons and we find the jury's misconduct not to be reversible error." 3 Kan. App. 2d at 275.

Despite the one juror's sharing the dictionary definition of assault with the other jurors, the district court's denying Duncan's motion for new trial did not constitute reversible error.

Goseland contends that the juror misconduct in his case cannot be harmless error as it was in *Duncan* because the evidence against him was "weak and circumstantial." We disagree. Not only is the evidence of defendant's guilt "overwhelming," but the conduct of the juror in *Duncan* is far more egregious than that of the juror in the present case.

We do not find that the district court abused its discretion in denying Goseland's motion for new trial based on juror misconduct.

We next consider if the district court's instruction to disregard Goseland's not testifying was clearly erroneous. Jury Instruction No. 6 stated: "You should not consider the fact that the defendant did not testify in arriving at your verdict." After the State rested its case, the district court was advised that there would be no defense evidence. Goseland stated that he understood that he had the right to testify and he voluntarily chose not to. Then the following exchange occurred between the district court judge and Goseland:

"THE COURT: All right. You understand, sir, that—I assume we've given a copy of the instructions to you through your attorney and I have instruction number 6, which goes to you not testifying, which I believe covers the question that the jury is not to consider the fact that you did not testify in arriving at their verdict, you understand that, sir?

"THE DEFENDANT: Yes, sir.

"THE COURT: And the only thing I want to make a record on is you understand you do have the right to testify, you consulted with your attorney, and you have waived that right on a voluntary basis, is that correct, sir?

"THE DEFENDANT: That's correct.

"THE COURT: All right. Thank you."

Goseland's counsel did not object at that time to the instruction. Nor has this court's attention been directed to any other time when he objected to the court's giving Instruction No. 6. The standard of review recited in Goseland's brief is for an instruction given without contemporaneous objection:

"The standard of review applied to jury instruction error requires an objection before the jury retires, stating distinctly the matter objected to and the grounds for the objection, unless the instruction or the failure to give the instruction is clearly erroneous."

"An instruction is clearly erroneous. if the appellate court is firmly convinced that, if the error had not occurred, there is a real possibility that the jury would have returned a different verdict." *State v. Castoreno*, 255 Kan. 401, Syl. ¶¶ 1, 2, 874 P.2d 1173 (1994).

Goseland contends that Instruction No. 6 is identical to PIK Crim. 52.13, which "for at least 15 years . . . has been specifically disapproved by the P. I. K. committee as well as this Court." It is not accurate to say that the instruction has been disapproved. It appears as a pattern instruction in PIK Crim. 2d and PIK Crim. 3d. In both editions, however, the Notes on Use state that it "should not be given unless there is a specific request by the defendant." In *State v. Perry*, 223 Kan. 230, 573 P.2d 989 (1977), the sole issue was whether the district court's giving of 52.13 over Perry's objection violated his Fifth Amendment right not to testify. At the time Perry was tried, the PIK Committee note was identical to its current form. 223 Kan. at 235. This court affirmed Perry's conviction. It stated: "The giving of an instruction, over objection of the defendant, that the jury shall not consider the fact that the defendant did not testify in arriving at its verdict is not constitutional error." 223 Kan. 230, Syl. ¶ 1.

Goseland contends that the district court gave the failure-to-testify instruction *sua sponte*. The State does not contend that Goseland requested the instruction, but it specifies five surround-

ing circumstances which it argues indicate that Goseland opened the door to its being given and then acquiesced in it. Those circumstances are as follows: During voir dire Goseland's counsel asked the prospective jurors: "Do you understand that my client does not have to testify in this case? And do you understand that that's not an interpretation that he's guilty, you understand that?" Receiving no negative responses, counsel continued: "The Court will instruct you that if that happens, you understand that the—that the accused doesn't have to take the stand and have the prosecutor try to trip them up or trick them up or do something to shadow his not guilty position, he doesn't have to do that, you all understand that?" Then, in checking with Goseland about his intention not to testify, the district court informed the defendant and his counsel of the intention to give the failure-to-testify instruction to the jury. This occurred after the State rested its case. No objection was raised at that time to the giving of the instruction. Finally, one of the grounds upon which Goseland sought a new trial was that the jury disregarded the failure-to-testify instruction. We do not find the instruction to be clearly erroneous.

Goseland also argues that the harm caused by the district court's giving Instruction No. 6 was compounded by its being given in conjunction with a modified version of the pattern instruction on the credibility of witnesses. He complains that the two-instruction combination gave the jury different criteria for evaluating prosecution witnesses from the criteria given for evaluating defense witnesses. It is not clear how this applies where the defendant called no witnesses.

On evaluating testimony, the jurors were instructed:

"It is for you to determine the weight and credit to be given the testimony of each witness. You may take into account his ability and opportunity to observe and know the things about which he has testified, his memory, manner and conduct while testifying, any interest he may have in the result of this trial, and the reasonableness of his testimony considered in the light of all the evidence in this case. You have a right to use that knowledge and experience which you possess in common with men in general, in regard to the matter about which a witness has testified, and you may, of course, utilize your common sense. You must not consider any knowledge or experience that you do not share in common with men in general."

PIK Crim. 3d 52.09, the pattern instruction on evaluating testimony, states: "It is for you to determine the weight and credit to be given the testimony of each witness. You have a right to use common knowledge and experience in regard to the matter about which a witness has testified." In pertinent part, the Notes on Use state: "Expanding this instruction was not approved, but held not to be clearly erroneous when the expansion was not objected to in *State v. Clements*, 241 Kan. 77, 81-82, 734 P.2d 1096 (1987), [and] *State v. Bodtke*, 241 Kan. 96, 100, 734 P.2d 1109 (1987)." There is no contention by Goseland that an objection was made to expanding the instruction.

We conclude that the instruction was not clearly erroneous in that there was no real possibility the jury would have returned a different verdict had the instruction not been given. As we previously noted, the evidence of Goseland's guilt was overwhelming.

Goseland's final issue on appeal is that the district court abused its discretion in denying his request to have another TCF evaluation prepared and in refusing to consider a motion to modify sentence. In pertinent part, the complaint/information filed against Goseland in the present case (93CR256) states:

"[I]n the County of Sedgwick, and State of Kansas, and on or about the 9th day of August, 1992, A.D., one PAUL L. GOSELAND did then and there unlawfully, willfully, possess cocaine at 2700 South Broadway, Wichita, Sedgwick County, Kansas, after prior convictions, to-wit: March 12, 1992, Possession of Cocaine, contrary to K.S.A. 65-4127a, Class C Felony, Case No. 92CR124; and September 26, 1991, Possession of Cocaine, contrary to K.S.A. 65-4127a, Class C Felony, Case No. 90CR1755."

Presentence investigation (PSI) and TCF reports were prepared in each of the previous cases, and a PSI report was prepared in the present case. The TCF reports for the two previous convictions are identical. They bear dates of November 24, 1992, and June 3, 1993. The sentencing date in the present case was August 6, 1993. In the TCF reports from the previous two convictions, the recommendation was that Goseland "[s]erve appropriate sentence." The recommendation is followed by these comments: "It is recognized that this offender has done poorly in the community and is in need of incarceration at this time. It is also felt that he is in need of intensive substance abuse treatment."

At the sentencing hearing in the present case, Goseland's counsel requested a suspended sentence. Goseland was sentenced to a term of life in prison based on conviction of a class A felony. K.S.A. 65-4127a(a); K.S.A. 21-4501(a). The district court judge stated, "In reviewing this file, I've reviewed several SRDC reports and several presentence investigation reports." Defense counsel asked, "Would the Court request another SRDC report so that I may file a motion to modify the sentence?" The district court judge responded: "No, sir. I think the other two have been enough. If he—he goes through, I think, an SRDC rotation, so he'll go through that rotation. But I don't think it will benefit him, . . . so your request is denied." Then the judge added, "I am considering this a final judgment . . . of this case." Defense counsel asked if appeal time therefore started 10 days from the date of sentencing, and the district court judge said that was correct.

Goseland contends that the district court abused its discretion in denying him the opportunity to be evaluated and to seek modification of the life sentence. He relies on *State v. Saft*, 244 Kan. 517, 519, 769 P.2d 675 (1989), for the proposition that there is a statutory requirement that a defendant who files a timely motion be given an opportunity to have his sentence modified. His reliance on *Saft* is misplaced. Goseland did not file a motion to modify but instead contends that no motion was filed because there was no TCF report on which to base a request for modification and the district court judge announced at the time of sentencing that he considered the sentence to be "a final judgment." The issue in *Saft*, "whether a district court has jurisdiction to modify a sentence pursuant to a motion filed within 120 days from a modification of sentence, but outside the 120 days from the imposition of the original sentence," 244 Kan. at 518, has little if no bearing on the issue in the present case. It seems that Goseland's point in citing *Saft* was that his being denied the opportunity to file a motion to modify places him in the same position as a defendant who files a motion which the sentencing court improperly fails to consider. It should be noted, however, that this court affirmed the district court's holding that it lacked

jurisdiction, on Saft's second motion to modify, to modify his previously modified sentence. 244 Kan. at 518, 521.

The State dutifully brings to the court's attention *State v. Tillman*, 18 Kan. App. 2d 556, 559, 858 P.2d 1219, *rev. denied* 253 Kan. 863 (1993), in which the Court of Appeals stated: "We can find no exceptions in the statutes or the available case law to the rule that an SRDC report is required in every case." Tillman pled guilty and was sentenced to a term of imprisonment which was to run consecutive to previously imposed Missouri sentences. The sentencing judge "made reference on the record to Tillman being evaluated at the State Reception and Diagnostic Center (SRDC)." 18 Kan. App. 2d 556, 557.

"Tillman moved to modify his sentence. At the time of the modification hearing, the judge learned for the first time that Tillman had not been remanded to the custody of the Secretary of Corrections or referred to SRDC. The judge was informed at the modification hearing that, on the day of the sentencing, Missouri authorities were waiting at the Johnson County correctional facility to transport Tillman back to Missouri. Despite the judge's directive, Tillman was inexplicably given to the Missouri authorities. Given this fact, no SRDC report was available to the judge." 18 Kan. App. 2d at 557.

On appeal, Tillman raised the question whether the district court abused its discretion in denying his motion to modify. He based his argument on K.S.A. 1989 Supp. 21-4603(3)(a), which provided in pertinent part: " '[T]he court . . . shall modify such sentence if recommended by the state reception and diagnostic center unless the court finds that the safety of the public will be jeopardized and that the welfare of the inmate will not be served by such modification.' " 18 Kan. App. 2d at 558. He argued that it was improper for the district court to deny his motion without an SRDC report "because the report might have recommended a lesser sentence." 18 Kan. App. 2d at 559. The Court of Appeals agreed, and it added that an evaluation at SRDC is mandatory pursuant to K.S.A. 75-5220 and K.S.A. 75-5262. 18 Kan. App. 2d at 559-60.

K.S.A. 1993 Supp. 75-5220(a) provides, in pertinent part:

"[W]ithin three days of receipt of the notice provided for in K.S.A. 75-5218 and amendments thereto, the secretary of corrections shall notify the sheriff having such offender in custody to convey such offender immediately to the Topeka

correctional facility [formerly SRDC] or if space is not available at such facility, then to some other state correctional institution until space at the facility is available . . . ."

K.S.A. 1993 Supp. 75-5262 provides:

"The primary function and purpose of the Topeka correctional facility shall be to provide for examination and study of all felony offenders sentenced by the courts of this state to the custody of the secretary of corrections so that each such offender may be assigned to a state correctional institution having the type of security and programs designed to accomplish a maximum of rehabilitation for such offender. Such offenders shall be delivered to the center as provided in K.S.A. 75-5220 and amendments thereto, upon being sentenced by the court."

Thus, the principal use of the evaluation is made by the Department of Corrections in placing offenders in facilities and programs. The district court's use is secondary. Here, in contrast to *Tillman*, there was an evaluation at TCF. The main purpose was satisfied by Goseland's previous examinations at TCF and the resulting reports. No further purpose would be served by generation of another report. It should be noted that the district court judge seemed to believe that Goseland would be examined at TCF as a matter of course and that his declining to order an evaluation report simply spared TCF staff the responsibility of preparing a written report of the evaluation, or, as seems likely in this case, of changing the date and reissuing the old report. This expectation matches the Court of Appeals' interpretation of 75-5220 and 75-5262 in *Tillman*.

K.S.A. 1993 Supp. 21-4603(d) provides in pertinent part:

"(1) Except when an appeal is taken and determined adversely to the defendant as provided in subsection (d)(2), at any time within 120 days after a sentence is imposed, . . . the court may modify such sentence . . . by directing that a less severe penalty be imposed in lieu of that originally adjudged within statutory limits and shall modify such sentence if recommended by the Topeka correctional facility unless the court finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the inmate will not be served by such modification.

"(2) If an appeal is taken and determined adversely to the defendant, such sentence may be modified within 120 days after the receipt by the clerk of the district court of the mandate from the supreme court or court of appeals."

Because the district court has discretionary authority for 120 days to modify a sentence without regard to the TCF report, it does

not seem that the district court's declining to order a TCF report precluded the possibility of modification of Goseland's sentence and did not preclude the filing of a motion to modify. The district court judge's statement that he considered the sentence to be a final judgment, however, clearly conveyed to Goseland and his counsel the message that filing a motion would be futile. Although we disapprove of the judge's statement, it did not preclude the defendant from filing a motion to modify.

Here, the district court judge, at the time of sentencing, already had all the information available from the defendant's previous evaluations at TCF. As previously noted, the two reports were identical, and the second report was dated less than two months prior to sentencing in the present case. There would be no reason for the judge to expect supplementation of the information available at sentencing. Under the unusual facts of this case, the failure to order a third TCF report was not an abuse of discretion, nor did the district court deny the defendant the opportunity to file a motion to modify his sentence.

Goseland makes one other argument with regard to the district court's refusing to entertain a motion to modify. He asserts that the district court's position was "based in part on the court's perception that probation for a class A felony was not the legislative intent." He contends that this "perception" is a misperception and compares this case with *State v. Lumbrera*, 252 Kan. 54, 74, 845 P.2d 609 (1992).

Here in pertinent part are the district court judge's remarks about Goseland's extensive history of substance abuse and criminal activities:

"I don't see where I have an option of—a viable option, because of his background, it goes back approximately ten years. And I appreciate your arguments on your client's behalf, and you've done—you've been a very good attorney representing Mr. Goseland throughout this case. Mr. Goseland has known the ramifications of what happens to him when he has been on probation under these other two cases. It has not made a dent in 1990, 1992, or 1993. I don't know how the 1990 case is going to come out. I don't know whether it will be affirmed or reversed, I have no idea. Apparently the '92 case has been affirmed. Judge Clark saw fit to sentence your client, I believe, to five to twenty years, and revoked that probation during the pendency of this case, I believe last October.

"Now, I just do not feel that I'm in a position to say, yes, we're going to give you another chance if you make if four and a half years, three and a half years in the state penitentiary, and we'll come out and put you under this type probation, because I do not feel this is what the legislative intent was of suspending the imposition of sentence."

In *Lumbrera*, the district court stated:

" 'I am of the opinion since the legislature has been so clear in its statement as to eligibility for parole for a class A felony that that makes it very clear to me that the public policy of this state states anybody convicted of a class A felony should not be considered for probation. On that basis and my recitation of the law that I feel that the application for probation should be denied.' " 252 Kan. at 74.

This court concluded that the district court's analysis was erroneous:

"Parole eligibility requirements set forth in K.S.A. 1991 Supp. 22-3717, by their very nature, apply only to persons serving sentences of imprisonment. The statute has no application to determination of whether or not probation should be granted. The trial court stated it did not consider probation herein because of 22-3717. Hence, judicial discretion was not involved in the denial of probation. Inasmuch as we are reversing the conviction and remanding the case for a new trial, there is no need to remand for resentencing." 252 Kan. at 74.

We do not find *Lumbrera* to apply here for the reason that the district courts' analyses are dissimilar. Here, the judge never states that probation is not to be considered. The judge's statement concerning legislative intent referred to suspending sentence in the present case until the defendant served his sentence for the previous conviction. We find no abuse of discretion.

The judgment and sentence are affirmed.